[No. 5646.]

## The Windsor Reservoir and Canal Company et al. v. The Lake Supply Ditch Company et al.

1.   **Appeals—Questions Considered**—In an appeal by several from a decree adjudicating priorities to the use of water, questions in which the public have an interest may, in the discretion of the court, be considered, though the parties, by reason of failure to comply with the statute or rules of the court, may be precluded.—P. 216.

2.   **Water Rights—Appropriation**—A corporation constructed the embankment of a reservoir in the bed of a stream, but applied the water to no beneficial use. It afterwards conveyed the reservoir site to another, reserving any appropriation of priority which it had acquired by reason of construction. Held, that having never applied the water to any beneficial use, it had nothing to reserve, and the reservation accomplished nothing. —Pp. 218, 220.

3.   **Estoppel—Deed**—The grantee of a reservoir site expressly reserving "any appropriation or priority acquired" by the grantor, by reason of construction, is not, by accepting the deed, estopped to deny the existence of any such right in his grantor. —P. 221.

4.   **Water Rights—Adjudication of Priorities—Reservoirs**— It is error to award two separate reservoirs priorities of the same date and capacity, for the same construction, and the same storage of water.—P. 221.

An appropriation to fill a lake for pisciculture cannot be provided for or recognized in the proceeding.—P. 232.

The court has no jurisdiction to determine whether the water appropriated by means of one reservoir may be changed to and stored in another, nor whether different owners of ditches or reservoirs may exchange water.—P. 226.

The statute does not contemplate that the same reservoir may be twice filled in the same year; and a decree permitting it is, as against a junior appropriator, error.—Pp. 223-225.

Two appropriations are made by the same reservoir at different dates. It is error to decree the appropriator a priority as of the earlier date for the full amount of the two appropriations.—P. 227.

An enlargement of a canal for irrigation so as to form a receptacle where waters are temporarily accumulated for immediate irrigation is not a reservoir to which a priority can be awarded.—P. 233.

A decree determining the relative priorities of particular reservoirs does not affect the rights even of the parties thereto, in respect to other reservoirs.—P. 232.

5. **Precedents**—General expressions in an opinion must be construed in connection with the facts of the case.—P. 230.

It was not decided in Reservoir Co. v. Water Co., 25 Colo. 161, 27 Colo. 532, that one who had, subject only to the superior right of a mill owner, made an appropriation for storage from the river above the mill-race, and before any one below the point of discharge, had acquired a right to the water after its return to the stream, was junior to the latter, as to the water so returned; but only that, as to the water to which the mill owner was entitled, the appropriator above the mill could not, by any dealings with the mill owner, divert the water which had so been wont to flow past the mill, until the particular reservoir to fill which the water of the tail-race had been appropriated, had received its proper supply.—P. 230.

*Appeal from Larimer District Court.*
*Hon. Christian A. Bennett, Judge.*

Mr. C. D. TODD and Mr. JAMES W. MCCREERY, for appellants.

Mr. L. R. RHODES, Mr. L. R. TEMPLE and Mr. H. N. HAYNES, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is a joint appeal by three separate corporations from certain subdivisions of the general decree under the appropriate statute establishing the relative priorities of rights to store water in reservoirs in water district No. 3.

1. Two of the numerous appellees say that assigned errors which concern two or more appellants severally may not be reviewed, because the statute granting appeals allows a joint appeal only when all the appellants "are affected in common with each other by some portion of said decree."—Session Laws 1881, p. 156, § 27 (§ 2427, Mills' Ann. Stats.).

Appellees may be correct in their statement that some of the questions which appellants ask to have reviewed do not affect all appellants in common; but at least one or more do concern all of them alike. Possibly—but we do not so decide—a strict construction of the language above quoted from the statute might prevent appellants from insisting on the assignments of error to which objection is made. The record, however, discloses that practically all the parties to this proceeding whose rights were adjudicated below are here, either as appellants or appellees, and that the two appellees who interpose this objection by cross-errors, themselves present, and in their briefs argue, some of the questions which they say appellants are precluded from pressing for decision.

This statute enjoins upon the courts a liberal construction of its provisions, to the end that all persons may secure the just determination and protection of their rights.—Session Laws 1881, p. 155, § 24 (§2423, Mills' Ann. Stats.). These things considered, and appellate practice permitting this court, in its discretion, to notice errors appearing of record which, because of their failure to comply with the statute or the rules of court, the parties themselves may not urge, we have concluded that it will be to the public interest, save costs to the parties and avoid protracted litigation, to settle on this review the various questions presented by the record which are within the issues the act has in view and which affect substantially the integrity of the various provisions of the decree, to the end that it may, so far as practicable, be harmonious and just to all the parties.

2. The act under which this adjudication was made enjoins on the court the duty of hearing evidence in support of the respective priority claimants, and thereupon entering a decree establishing the

relative priorities of right of appropriation of water
of the several reservoirs in the water district, each
according to the time of its construction, and to the
extent of its capacity.—Session Laws of 1881, p. 144,
§ 4 *et al.;* Mills' Ann. Stats., § 2403.   Before a decree
in favor of any reservoir is entered, it should there-
fore be made to appear, *inter alia,* that thereby an
appropriation of a certain quantity of water has been
made.   Both the constitution and statute recognize
the maxim, "first in time, first in right"; and it has
been repeatedly decided in this jurisdiction that an
appropriation consists of an actual diversion of water
from a natural stream, followed within a reasonable
time thereafter by an application thereof to some
beneficial use.

Keeping in mind the foregoing, we proceed,
first, to discuss that subdivision of the general de-
cree which relates to Douglass lake or reservoir.
One of the appellees, The North Poudre Irrigation
Company, on September 10, 1901, began its con-
struction, and in its sworn statement claimed a prior-
ity therefor as of that date.   A portion of the site
of this reservoir is in the bed of Dry creek, and the
work of construction consisted in throwing up em-
bankments across and alongside the creek.   They
were substantially finished by appellee in the sum-
mer of 1902.   In the spring or summer of 1903, ap-
pellee contracted to sell the site to one of the ap-
pellants, The Poudre Valley Reservoir Company,
and thereafter, about March, 1904, the deed to the
same was executed, reserving, however, to the
grantor, any priority or appropriation which it had
theretofore made by reason of its construction work.
The court found that appellee thereby had perfected
an appropriation before the sale of the site, which
sale was several months before the decree was en-
tered, and rendered a decree awarding to appellee

priority No. 50, by reason of its construction of the Douglass reservoir, as of date September 10, 1901, for 460,000,000 cubic feet of water; and, as it appeared that appellee had conveyed to appellant, The Poudre Valley Reservoir Company, the Douglass site, and that appellee owned other reservoirs numbered 5, 6, 7 and 9, in the same water district, which had a capacity for storing the amount awarded to appellee for the Douglass reservoir, the court permitted appellee to transfer and store in these reservoirs the amount of the Douglass priority. At the same time, and in another part of the same decree, it awarded to appellant, The Poudre Valley Reservoir Company, priority No. 51, five days later, by reason of its construction of the Douglass reservoir, of precisely the same capacity which had been awarded to appellee.

It is the contention of appellants that, under the undisputed evidence, no priority should have been awarded to appellee, the original owner and builder in part of the Douglass reservoir, as the result of such partial construction, because appellee had not then, and never has, perfected an appropriation. There was no finding of fact by the referee or court that appellee ever perfected its appropriation of water for storing in Douglass reservoir, and the record would not justify such finding. Appellee substantially completed the banks, but not the entire work, on the reservoir, and the evidence leaves it uncertain whether, by means of ditches or otherwise, it ever connected the reservoir with the claimed sources of supply; but, if it did, certainly it never turned water into the reservoir, except such as naturally flowed into it from Dry creek or Park creek, of which no use was ever made.

Turning to its sworn statement of claim, we find

that its designated sources of supply for filling the reservoir were Park, or Dry, creek, and by means of the North Fork ditch out of the North Fork of the Cache la Poudre river, a large portion of which water was to be diverted into the North Fork ditch, by a system of exchanges, in lieu of water which appellee had stored in its Fossil creek reservoir, farther down the valley.

From this statement it also appears that of the 460,000,000 cubic feet, the total capacity claimed for the reservoir, 430,000,000 feet were to be received by means of the proposed system of exchanges, which, so far as we can ascertain from the evidence, appellee has not yet put into operation, even if it has the facilities for doing so.   In short, the only completed appliance that appellee seems to have with which to impound water consists of its dam across the bed of Dry creek, which intercepts the waters that naturally flow in its channel.

Appellee does not seriously contend that it actually diverted from these sources of supply, or filled Douglass reservoir, or used water therefrom, before it sold and conveyed its site to appellant. Nevertheless, it claims a perfected appropriation prior thereto as the result of its construction work. By an ingenious argument it seeks to uphold this claim.   The year 1902, appellee says, was a dry year. There were no spring or summer floods, and the Cache la Poudre river was so low that only senior reservoir claimants could get any storage water. For these reasons appellee says its failure that season to store in or use water from Douglass reservoir, except as to a small volume from Dry creek which was not used at all, is excusable.   Appellee makes no claim that it stored water in Douglass reservoir during 1903, because in the spring or early summer of that year it had contracted to sell the site to appel-

lant, and the work of the latter in constructing its feeder ditch thereto would have interfered with appellee's attempt at storage, had any been made. Appellee also says that in 1903 water to the capacity of the Douglass reservoir, or as much thereof as it could get without infringing prior rights, was stored by it in other reservoirs which it owned.

The record does not support appellee in any of these contentions. It does not satisfactorily appear that it had in readiness in 1902 appliances for getting, or that it got, into the reservoir water from the claimed sources of supply; neither does it appear that in 1903 it otherwise, or elsewhere, stored the capacity claimed for it. Indeed, the findings of the court, on which the decree in appellant's favor with respect to the Douglass reservoir is based, conclusively show that the award was predicated entirely upon the work which appellee did on the reservoir before the contract for sale of the site was made. The only finding touching the storage of water in Douglass reservoir, is that, "Prior to the transfer of said site to The Poudre Valley Reservoir Company, the latter company filled said reservoir by means of its feeder from the Cache la Poudre to nearly its full capacity, and used and enjoyed the same." This filling and using of water, the finding itself states, was by appellant, not appellee, before the formal transfer by deed of the site was executed, it is true, but after appellant's right attached by the contract of sale.

It is altogether clear from the evidence, which is strengthened by the fact that there is no finding of the referee or trial court to the contrary, that an appropriation of water was not made or a priority acquired by appellee for Douglass reservoir, either before it conveyed the site to appellant, or at all. The above finding evidently was intended to be, and

was, in favor of appellant, and is the one on which
its own priority of later date was based.  The reser-
vation to the grantor, therefore, in the deed, of a
priority or appropriation, saved nothing, because
nothing had been acquired by appellee.  Appellant
is not estopped by this reservation clause to claim
an appropriation of its own for Douglass reservoir,
because its acceptance of the conveyance did not
amount to an acknowledgment of the existence of an
appropriation.  The priority for which appellant
obtained a decree was not the alleged priority or ap-
propriation which appellee attempted to reserve in
the deed, but was and is an independent appropria-
tion of another date acquired from the state by appel-
lant as the result of its own diversion of water and
application to a beneficial use.

Manifestly it was improper to grant two sepa-
rate reservoir priorities of the same capacity and
date to the same reservoir, as the result of one and
the same construction and the same act of storing.
The referee and the trial court, apparently realizing
such unfitness, sought to avoid it and preserve to the
appellee, by reason of its original partial construc-
tion, a priority to the extent of the capacity claimed
by permitting a transfer of the volume to other reser-
voirs which appellee owned.  For reasons which we
have already given, appellee had no priority which
could be thus transferred.  If, however, there was a
priority which was the subject of transfer, reservoirs
5 and 6 were completed and have decrees for prior-
ities of their own of a date later than that of the
Douglass priority, and 7 and 9 were not completed
at the date of the decree, and their total capacity is
not equal to the aggregate capacity awarded to the
Douglass reservoir.  But, aside from the impossi-
bility of fully carrying out the transfer, had there
been a valid appropriation, we do not think any such

issue was present in this proceeding, or that the statute permitted its determination. Possibly no change in the point of diversion was involved in the transfer, and so the statute of 1899 or 1903 relating to that subject, may not apply. The change of place of storage or use from one reservoir to another, if not identical in principle, is analogous to a change of place of use of irrigating water from one tract of land to another. The matters for determination in this proceeding were the relative priorities of the reservoirs in the water district, and not the right to change the place of storage from one reservoir to another. The issues involved in the latter might, and probably would, be quite different from those in the former.

For all these reasons, that part of the decree awarding a priority to appellee for Douglass reservoir, and permitting it to be utilized through others of its reservoirs, is erroneous and should be entirely omitted.

3. One provision of the decree permitted appellee, The North Poudre Irrigation Company, to fill its Caverley, Stutchell, and Fossil creek reservoirs twice in any one year to their full capacity, and another provision gave to appellant, The Water Supply and Storage Company, a similar right for several of its reservoirs; with a proviso in each case "that said second filling shall in no manner affect, prejudice or injure the rights of junior reservoir appropriators." Some of the appellants object to any double filling whatever, and say that no provision therefor should be in the decree, as there is no authority in the law for it. The appellee objects to the proviso in its own decree, and while it concedes that in a proper case a double filling should be allowed, it objects to the provision here in favor of appellant storage company; because, it says, the evidence does

not establish any right thereto. Whether, after all, reservoirs in a water district have, in any one season or year, been once filled to their decreed capacity, a second filling may be had, and if so, in what order they shall be filled, are not questions now before us. The question is whether, during the same season and before junior reservoirs are filled once, a senior reservoir may, under our statute, have a decree allowing more than one filling on the same priority or appropriation of water for storage. Appellee says there is no express provision of the statute to the contrary, and that under our constitution, which allows an appropriation either by means of a ditch or canal for immediate irrigation, or a reservoir for storage of whatever flow is diverted, or stored, and beneficially used, it necessarily follows, when such right is claimed in the filing statements, as is the case in at least one of its statements, and the facts show, as it is claimed they do here, that a double filling has been enjoyed, a decree therefor is proper. We cannot concur in this reasoning. Rather do we think the one who makes such a claim should be required to put his finger on some affirmative enactment so providing. We have been cited to no such authority in our statute, and can find none. By necessary construction, the statute which provides for these decrees forbids the allowance of more than one filling on one priority in any one year.

By section 4 of the act of 1881 (Mills' Ann. Stats., § 2403), the decree must award priorities to the several reservoirs in the water district, to each according to the time of its construction and to the extent of its capacity for storage purposes, and by section 9 (Mills' Ann. Stats., § 2408), the reservoirs must be separately numbered in consecutive order according to the date of priority of appropriation of water made thereby. These provisions mean that

to each reservoir shall be decreed its respective priority, and this priority entitles the owner to fill the same once during any one year, up to its capacity, and restricts the right, upon one appropriation, to a single filling for any one year. A double filling in effect would give two priorities of the same date and of the same capacity to the same reservoir, on the same single appropriation, which is impossible in fact and in law, and, if allowed, would violate the fundamental doctrine of the law of appropriation, he who is first in time is first in right, by making a junior superior to a senior reservoir appropriator. Necessarily the capacity of a reservoir, which the statute expressly says is the extent of its appropriation, is what the reservoir will hold at one time, not what can be stored in it by successive fillings; otherwise the capacity would vary, depending not on what the reservoir will hold, but on how many times it can be filled in one year. When we speak of the capacity of a barrel or bottle, we mean the number of gallons or ounces it will hold when filled once, not many times. When we ask about the capacity of a room, or hall, we want to know how many people it will hold at one time, not how many may be crowded into it during the course of a year or a month. The illustration given by appellee, that the volume of water which a ditch may take in one season is not its carrying capacity filled once, but that water to such capacity may be run through the ditch so long as it is needed to irrigate the lands of its owner, is not pertinent. An appropriation awarded to a ditch may be limited not only as to volume by its carrying capacity, but also by time. That is, the use of water through it is limited by its carrying capacity, and as to duration by the necessity of the use; and it may also be restricted to some particular season or time of the year. All these characteristics do not apply

to an appropriation for storing water in a reservoir. An appropriation acquired by building a reservoir and storing water in it, and thereafter using it on lands, is measured by its holding or storage capacity. The quantity of water which may, in any one year, be lawfully stored therein upon one appropriation is not the number of cubic feet that may be run into it as the result of successive fillings and emptyings, but what it will hold as the result of a single filling. While the owner of a ditch, in his use of water, is not, as we have said, restricted to its carrying capacity once filled, but may use water during the period of time for which it was appropriated, so long as he has need of it, the appropriation for a reservoir, in the nature of things, is measured by the quantity of water which it will hold at one filling. A reservoir appropriation, like that for a canal, cannot be made to do double duty. To permit a double filling of a reservoir in any one year on one appropriation, as against junior rights, is just as obnoxious to the principle mentioned as if an appropriation for immediate irrigation, through a canal, after it had been applied to the particular land for which it was diverted, was then made to serve other lands.

The trial court evidently had in mind the foregoing when it added to the decree, permitting a double filling, the proviso that the rights of junior appropriators should not be thereby affected. If this proviso has any significance at all, it is, expressed concretely, that double fillings shall not be allowed to a senior reservoir appropriator in any one year, until after junior reservoirs have been once filled. The proviso, therefore, virtually neutralizes what is claimed for the preceding clause.

We are of the opinion that all provisions in the decree for more than one filling of reservoirs in any one year are wrong, and should be omitted in the

revision thereof, which must follow the remanding of the cause.

4.   Counsel have discussed, on the one side with full commendation, on the other with disapproval, the system of exchanges between its several reservoirs which appellee proposes to adopt.  It is not necessary now to explain the ingenious and somewhat complicated method of change and interchange contemplated.  We are left in doubt as to whether the decree really purports to sanction such system. The parties seem to agree that it does.  If it is to be so interpreted, it is wrong, if for no other reason, because such issues have no place in this proceeding. The question of exchange of water between the same or different owners of ditches or reservoirs, is a matter wholly foreign to the object of this, and is to be determined in some other appropriate, proceeding brought for that specific purpose.  But if such issue is properly here, its determination was wrong. We do not attribute to the inventors of this scheme a design to obtain an undue advantage over other appropriators, but if such system of exchange, taken in connection with other parts of the decree in favor of the owner of the Fossil creek reservoir, is put into practice, it will necessarily convert a junior into a senior right.  It will make many of the reservoirs of appellants which were built and used for storage a decade before Fossil creek reservoir was conceived, subordinate to the latter.  No device or combination of appliances that would produce such a flagrant injustice should be looked upon with favor or sanctioned by a court of equity.  All references in the decree, if any, purporting to approve or disapprove such exchanges, are to be eliminated.

5.   We now take up some important questions raised by assignments on the part of appellants and cross-assignments by appellee to the decree pertain-

ing to the same Fossil creek reservoir. They merit separate consideration.

The first specification by appellants is that, under the statement of its owner and the findings of the court, appellee made two distinct appropriations of water for this reservoir, the first as of date March 5, 1901, of 200 cubic feet per second of time, the second of date October 22, 1901, of the same volume; whereas, in direct contradiction of such statement and findings, the decree awards the entire priority of 400 cubic feet per second as of date March 5, 1901. In its brief appellee disclaims any right to more than 200 second feet of priority as of date March 5, and expressly says that it claims no right of greater diversion therein adverse to any appellant for the second appropriation of 200 second cubic feet earlier than October 22, 1901; but insists, nevertheless, that, fairly construed, the decree accords with its present assertion of claim. In view not only of this concession, but of the positive findings, the decree should be definite upon these points. It is now not merely indefinite, but clearly wrong, in that it says that under the findings the appellee is entitled to one appropriation of the entire volume as of date March 5, 1901. It must, therefore, be modified so as to award two separate appropriations as of the dates and volumes specified in the findings.

6. The next question pertains to the prior right, as against appellants, which the decree gives to Fossil creek reservoir, to be filled by means of its alleged prior appropriation of the water of the Hottel mill-race. The importance of the principle of law involved, and the value of the contested right to the parties, have led to a careful consideration of their respective arguments.

Before this special proceeding was instituted, one of these appellees, The Cache la Poudre Reser-

voir Company, in a suit in equity against one of these appellants, The Water Supply and Storage Company, obtained a decree which, as between their reservoirs then in controversy, made that of the reservoir company senior.—*Reservoir Company v. Water Company,* 25 Colo. 161, 27 Colo. 532.

In the pending proceeding the trial court, in enforcing what it conceived to be the doctrine established by the decision in that case, determined that the Fossil creek reservoir, owned by another of these appellees, The North Poudre Irrigation Company, was senior-to all the reservoirs of appellants, though the latter were beneficially used for a period of about ten years before work on the Fossil creek structure was begun. In the pending litigation that decision is *res adjudicata* between the parties to that action who are present here, and as to the reservoirs whose conflicting rights were then determined. But it is not *res adjudicata,* even between those parties, with respect to other reservoirs owned by them, and not in any wise conclusive upon any other parties to this proceeding. Of course, under a similar state of facts between the same or different parties, and as to a different subject-matter, that decision would be followed here and its rule applied, not because of the principle *res adjudicata,* but *stare decisis.* The lower court was impressed with the apparent injustice of giving, out of the waters of the same stream, a preference to Fossil creek reservoir ahead of other reservoirs which were built and used for storage years before it was begun, but felt constrained, as we have said, to follow what it supposed to be the settled law in this state. To a full understanding of that case, the reported opinions above referred to, in which a detailed statement of the facts are given, should be read.

Briefly stated, however, and sufficiently so for our present purpose, the facts were that the storage company had made an appropriation for storage purposes out of the waters of the Cache la Poudre river, earlier in time than the appropriation made by the reservoir company from the same source of supply. Between the respective headgates of the feeder ditches of these reservoirs, that of the storage company being higher up the stream than that of the reservoir company, was the headgate of the Hottel mill-race, whereby had been made an appropriation for milling purposes long before either of the appropriations for storage purposes. The storage company always had recognized the superior right of the mill-race, and in filling its reservoir had allowed that appropriation of 60 cubic feet per second of time to pass down the river and into the mill-race, which, after it had fulfilled its function for power purposes, was turned back into the river. Such being the conditions, the reservoir company, before the storage company had ever diverted or used any part of the 60 cubic feet belonging to the milling company, built its reservoir and by means of a ditch, whose headgate is below the point of discharge of the milling company ditch, carried water and stored it in its reservoir, and afterwards used it in irrigating its lands. Upon this state of facts we held, in the first reported opinion, since it appeared from the complaint, and in the second opinion, as the evidence on final hearing sustained its allegations, that the reservoir company had made the first appropriation of this particular volume of water and was, as to the same, an appropriator prior to the storage company, though the latter may have been, and doubtless was, as against the reservoir company, and as to all other waters of the stream, a senior appropriator. This essential and vital fact of priority was the turning point in the

case, and because the reservoir company was the prior appropriator, we held that after its right to this 60 cubic feet of water had become vested, the milling company, by voluntarily, temporarily or permanently, abandoning a part or all of its appropriation, or by contract with the storage company to that end, might not divest such senior right of the reservoir, and confer it on the storage, company. All general declarations or statements in the opinion must be taken in connection with the facts of that case. It was not there decided or intended to be decided that one who had, subject only to the superior right of the milling company, made an appropriation for storage purposes from the river above the mill-race, and before any one below the point of its discharge had acquired rights to the return waters, was junior to the latter as to such returned volume. Much less was it decided (which is appellees' present contention) that the reservoir company, or any other person, might thereafter make an appropriation of water for storage purposes through ditches taking water out of the river below the tail-race and thereby acquire a priority over reservoirs for which appropriations had theretofore been made by means of ditches whose point of intake on the river was above the headgate of the mill-race, where such earlier appropriations above the mill-race were made subject only to the rights of the milling company and that of the reservoir company for the benefit of its particular reservoir then in controversy.

When we said there that the storage company might not, as against the reservoir company, for its reservoir then in question, take this 60 cubic feet of water, this was not equivalent to saying that it had no right whatever thereto. The effect of the holding was not that as to such volume the storage

company had no right at all and never could acquire any, but that until the reservoir of the reservoir company was filled, the storage company might not intercept any of the mill-race flow. Under the fundamental law of such priorities, if the storage company made an appropriation from the river of a given volume, as it had, though it was junior to that of the reservoir company for its particular reservoir, it became senior as to all the waters of the river, including the 60 feet, irrespective of the location of its headgate with reference to the mill-race, as against all subsequent appropriators who divert water from the same stream for storage purposes, whether they take it out above or below the mill-race.

This part of the decree proceeded upon the theory, deduced by the trial court from our former decision, that when the reservoir company made its appropriation by diverting water at a point below the mill-race, 60 cubic feet of water thereby became segregated from the river and was reserved for all time to appropriations then, and thereafter, to be made below that point, and never could be utilized by appropriators above the mill-race, even though their reservoirs were constructed and used years before such lower ones were started. Fairly considered, as it should be, with reference to the facts of the particular case, we do not think the decision susceptible of the construction which the court below, and appellee here, put upon it; but if it is, it is to be qualified by the views herein expressed.

That part of the decree, therefore, as to the so-called Hottel mill-race priority, giving, as against all reservoirs farther up the stream, a superior right to the Fossil creek reservoir, must be modified. As to the reservoirs included in the former action, that decision being *res adjudicata* is controlling here between the parties to that suit. As between other

parties, and the same parties respecting their other reservoirs, if any, it is not binding. The relative rights of such other reservoirs are to be determined by the application to the facts of the given case of the well-recognized doctrine of the law of appropriation "first in time, first in right," uninfluenced by that decision, except, of course (and on the ground *stare decisis*), where the facts are substantially the same as there.

The foregoing views adversely dispose of appellee's cross-assignment of error that its rights to the Hottel mill-race priority are not sufficiently guarded, and to appellants' assignment directed against the action of the trial court in holding that the former equitable suit settled the controversy between the rival reservoirs there considered.

7. Appellants argue that the court erred in giving too early a date to the priority awarded to The Larimer and Weld Reservoir Company for its reservoir. It would serve no useful purpose to review the pertinent evidence. Color is given to this contention by the filing statement in which a later date is claimed than the one allowed. But considering all the evidence bearing on the inception of the enterprise and the ensuing work of constructing the necessary appliances to perfect the appropriation, we do not feel justified in saying that the court made a mistake. The decree will not be changed in that regard.

8. The court found that a valid appropriation had been made for Mitchell lakes, a series of five small reservoirs, and gave a decree accordingly. As we read the record, these lakes are used for propagating fish, not for any purpose within the purview of the statute on which this proceeding is founded, except, perhaps, as to reservoir No. 1, water from which the court apparently thought had been used to irrigate about fifteen acres of land. The

decree should be modified by omitting any award for storage purposes to these lakes, except for No. 1, and as to that, the decree will not be altered.

9. By its cross-assignments, appellee, The North Poudre Irrigation Company, questions the correctness of the decree by which certain priorities were awarded to appellant, The Water Supply and Storage Company, for Richards and Curtis lake reservoirs. We think the objection interposed is good. If appellee's statement of the evidence on which the decree is based is correct, and our investigation tends to confirm it, and appellants do not point out wherein it is wrong, no valid appropriation of water from a natural stream was made for either of these reservoirs for storage purposes. A priority therefor is sought on the strength of a temporary storing of water for immediate irrigation, which the storage company had the right to divert to irrigate its lands in virtue of its ownership of stock in a ditch company which had a decree for so-called direct irrigation. In other words, these are what counsel calls "stock-filling reservoirs," temporary receptacles, forming part of a continuous conduit for carrying water from the stream directly to irrigate lands. This branch of the decree is, in principle, like that considered in *Finley v. Cache la Poudre Company*, an appeal from this same decree decided at this term and reported at p. 234, *post*, wherein we held that a decree for storage purposes, on such a state of facts, was improper. Following that decision, the subdivision of the decree for these two reservoirs must be held unwarranted and should be stricken out.

From the foregoing it follows that, upon the assignments and cross-assignments of error hereinabove discussed, the general decree must be modified and corrected in accordance with the conclusions

reached and stated by us. The cause is remanded for that purpose to the district court.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.