[No. 5913.]

### THE WINDSOR RESERVOIR AND CANAL COMPANY v. THE HOFFMAN MILLING COMPANY.

**Water Rights—What is Subject of Appropriation—Place of Diversion**—Water appropriated for the operation of a mill may be the subject of a subsequent appropriation for irrigation in such sense that the second proprietor will be entitled to the water when not needed or used for the operation of the mill. The second appropriator may as well have made his diversion at a point above the mill as below it. It is not required that the mill owner's appropriation when not in use by him should run idly through the mill-race into the stream before it can be appropriated by another.—(94, 95)

*Appeal from Larimer District Court* — Hon. JAMES E. GARRIGUES, Judge.

Mr. JAMES W. MCCREERY, for appellant.

Mr. L. R. RHODES, and Mr. L. R. TEMPLE, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The Hoffman Milling Company, appellee, plaintiff below, instituted this suit in March, 1905, in the district court of Larimer county, against The Windsor Reservoir and Canal Company, appellant, defendant below, and others, to recover damages for an alleged wrongful diversion of water.

The complaint sets forth seven separate causes of action, arising upon different dates, but alike in nature, for the recovery of damages for the alleged unlawful taking of water from the Cache la Poudre river, to which appellee claims it was entitled, to the latter's injury and damage, as is said, in an aggregate amount of $5,500.00, for which sum judgment was sought.

For the purpose of this discussion the statements of the several causes of action may be treated as identical. In substance and effect they are so, both as to the facts shown and the legal principles involved, differing only as to the time of the alleged injury and the amount of damage.

The first cause of action which may, therefore, be accounted illustrative of all, is as follows:

"That on April 1st, 1894, the predecessor in interest of the plaintiff erected a flouring mill and constructed a mill race appurtenant thereto on the Cache la Poudre river, near the City of Fort Collins, in Larimer County, Colorado, and diverted through said mill race and thereafter continuously used for manufacturing purposes in operating said flouring mill, water theretofore unappropriated at said point of diversion, and then and there subject to appropriation for mechanical purposes, to the extent of fifty cubic feet of water per second of time. That thereby an appropriation of water for manufacturing purposes was perfected as of date April 1st,

1894, of fifty cubic feet of water per second of time, which appropriation has been and is now in full force and effect, and has never been abandoned. That plaintiff, at the times hereinafter mentioned, has been, and is now the owner of said appropriation of water, mill and mill race.

"That at all times hereinafter mentioned this plaintiff was entitled by virtue of said appropriation and ownership as against all of the defendants to have the water of the said Cache la Poudre river flow down to the head of the plaintiff's mill race and through said mill race to the extent of fifty cubic feet of water per second of time, for the purpose of propelling its machinery and operating its mill.

"That notwithstanding the right of the plaintiff as aforesaid and in violation of said right the defendants herein did, on the twentieth day of March, 1901, wrongfully divert and impound all of the water of said Cache la Poudre river above the mill of plaintiff, and thereby prevent this plaintiff, during all of said time, from operating its said mill, and this plaintiff was entirely deprived of the use of said mill.

"That the value of the use of said mill during the time when plaintiff was wrongfully prevented from using and operating the same was and is the sum of Four Hundred Dollars ($400).

"All to plaintiff's damage in the sum of Four Hundred Dollars with eight per cent. per annum added thereto from the date of the commission of the aforesaid grievances to the date of judgment."

Issue was joined by way of general denial and trial had to a jury, resulting in a verdict for the appellee, against the appellant alone, for $4,000.00, the other defendants having been by the court discharged of liability, upon which verdict, after motion for a new trial overruled, judgment was duly en-

tered. It is to review this judgment that the case is brought here on appeal.

The only theory upon which recovery by the appellee can be predicated and sustained, under the issues, is for it to establish, by a fair preponderance of the testimony, the following controlling factors:

First. That it has a valid subsisting appropriation of waters out of the Cache la Poudre river;

Second. That such appropriation is prior to, and dominates, any right to the use of such waters by appellant;

Third. That at the time and times of the alleged wrongful diversion of said waters by the appellant, the appellee, by reason of its superior right thereto, was entitled to have and use the same, and that, at such time and times, it was ready and able to use, and actually needed said waters, for application to the beneficial purpose for which they had been appropriated; and,

Fourth. That but for appellant's conduct in diverting such waters, sufficient thereof would have gone down the stream, at the time and times complained of, to supply appellee's appropriation and needs, and that at such time and times, the damage sustained resulted exclusively and alone because of appellant's diversion and use of such waters.

A critical examination of the testimony shows that appellee did not successfully carry these burdens. Had the case been submitted to the jury for its finding, even under proper instructions as to the law, still, on the proofs adduced, the verdict returned could not be permitted to stand, since there was a total lack of testimony on certain of these vital points necessary to be established in order to warrant any recovery.

However, we do not rest this decision upon the foregoing proposition, nor do we consider numerous

other alleged errors, but, as in the equitable case between these same parties just determined by this court, we give attention only to the. fundamental error of the trial court, in its misapprehension of the decisions in the so-called *Mill-race case,* reported first in 25 Colo. at page 161, and again in 27 Colo. at page 532, and in applying such misinterpretation as the law of this case.

In the court below appellee, with an appropriation of fifty cubic feet of water per second of time for milling purposes, as of date April 1, 1894, diverted below the return point to the river of water from the Mason & Hottel mill, which latter mill has an appropriation of sixty cubic feet of water per second of time also for milling purposes, as of date 1868, contended that the latter volume of water should at all times be allowed, whether used or needed for use by the upper mill, to go down the stream to supply appropriators of this particular water, below its point of return, without reference to any claimed prior rights to its use, by appropriators thereof to a beneficial purpose, diverting the same above such return point. In other words, that after the sixty cubic feet of water per second of time had been appropriated by the upper mill it became in effect segregated from the general water of the river, and when not used by the upper mill owner, and not needed for use there, it was not subject, even when so unemployed, or at all, to appropriation by any user of water, diverting the same above the return point in the stream of this appropriation, but must be allowed, at all times, to go down the river, reserved for and subject to appropriation exclusively by those diverting, or who may desire to divert, water for a beneficial use, below the return point to the river, of this particular appropriation.

The trial judge, who heard both cases, in this

one, as in the equitable suit, adopted this view of
the law, and practically withdrew from the considera-
tion of the jury every fact question, except only the
one of the amount of damage.   And this, too, in the
face of direct proof showing that appellant had, by
at least four years, a prior appropriation of flood,
winter, waste and unused water for storage purposes
out of the Cache la Poudre river.   The court deter-
mined, as matter of law, that as appellant's appro-
priation and diversion of this particular water was
at a point above the tail of the Mason & Hottel mill-
race, such supposed appropriation has no validity,
and as against one having an appropriation, below
that point, of this particular water, whether prior or
junior to that claimed by appellant, the latter's is
of no avail.   The effect of this doctrine is to declare
that the original mill-race appropriation, when not
needed by its owner for use and in fact not used, is
not even then subject to appropriation and use by
one who diverts this water from the stream above its
return point to the river.   That it must be allowed
to idly and wastefully flow down the stream to and
beyond this point, and be there subject to appropria-
tion only by users below that point, while *bona fide*
appropriators thereof, above the tail of the mill-race,
are compelled to step aside and relinquish the use
theretofore made of it, and possibly abandon lands
already developed and improved through its applica-
tion thereto, in favor of a subsequent appropriator,
diverting and using the same below its return point
to the stream.   This would give a status and char-
acter to an appropriation of water for manufactur-
ing purposes, different from that of any other ap-
propriation, a distinction hitherto unknown here, or
elsewhere in the arid west. , It would, so far as the
reappropriation and enlarged use of this particular
water is concerned, nullify the fundamental doctrine

that priority of use gives prior right. We are unwilling to sanction such an invasion of this well-settled and recognized principle. This unhappy situation is due to the unfortunate misapprehension of the trial judge of what was in fact determined in the *Mill-race case.*

In overruling appellant's motion for a new trial the learned judge, among other things, referring to his former decision in the suit in equity between these same parties, already spoken of in this opinion, had this to say:

"All the matters in this case, except the motion for a new trial upon the ground of newly discovered evidence, were passed upon during the trial. They were also passed upon during the former trial between these same parties, of which this case is the sequel. At the former trial of this matter (the equitable suit), now on its way to the Supreme Court, I decided questions of law I believe in accordance with the rulings of the Supreme Court. It was the only interpretation I could give the Supreme Court decisions. If I wrongfully decided these questions, the Supreme Court will correct me. I cannot grant a new trial here on any theory that the law of the case is wrong. Should I do so it would undo everything I have decided at the former trial of the other case, and I do not think it would be in accordance with Supreme Court decisions."

From these remarks it will be seen that the trial judge applied the same law in this case that he had theretofore applied in the case in equity. It will be noted that already this court has declined such interpretation of the opinions in the *Mill-race case,* and now announced by the trial court as the law of this case. Not only is that interpretation denied in the equitable case between these same parties, just decided by this court, wherein there is

a full discussion of the law questions involved, all applicable to the matters here under consideration, but it is also denied in the case of *The Windsor Reservoir and Canal Company et al. v. The Lake Supply Ditch Company et al.,* 44 Colo. 214. These cases are controlling, and both declare the law to be directly contrary to that applied in the case at bar by the court below.

We do not discuss the objections urged by appellant to the complaint in the case, being of opinion that should a new trial be had, amended pleadings throughout will be necessary to meet the situation under the law of the case as here settled. While possibly the original complaint may not be obnoxious to a general demurrer, it manifestly is subject to motion to make more specific, or to special demurrer for sundry kindred reasons.

Because of the erroneous view of the law adopted by the court, as fixing plaintiff's right of recovery, the case is reversed and remanded, with directions to the trial court to proceed in conformity with the views here expressed.     *Reversed and remanded.*

Chief Justice Steele and Mr. Justice White concur.