No. 18,470.

ORCHARD CITY IRRIGATION DISTRICT *v.* J. E. WHITTEN,
STATE ENGINEER, ET AL.
(361 P. [2d] 130)

Decided April 3, 1961. Rehearing denied May 1, 1961.

Messrs. STEWART & BROWN, Mr. E. L. DUTCHER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN B. BARNARD, JR., Assistant, for defendant in error J. E. Whitten, State Engineer.

Messrs. SPARKS, CONKLIN & CARROLL, for defendant in error Durkee Ditch Company.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties appear here in the same order as in the trial court, and we will refer to them as plaintiff and defendants or by name.

Plaintiff owns and operates Fruit Growers Reservoir, situated almost midway between the lower reaches of Surface Creek and Dry Creek in Delta County, Irrigation Division No. 4, Water District No. 40. The two streams are parallel and adjacent tributaries to the Gun-

nison River. The reservoir is supplied with water largely by means of Alfalfa Ditch from Surface Creek and by means of Transfer Ditch from Dry Creek. In 1907 the district court of Delta County awarded the reservoir a decree for 3400 acre feet of water from Surface Creek. This decree determined the capacity of the reservoir to be 3400 acre feet.

Water supply from Surface Creek in many years was not sufficient to fill the reservoir. In 1925 plaintiff started the construction of Transfer Ditch to provide water from Dry Creek both for direct irrigation and to augment the storage water supply available to the reservoir from Surface Creek. Subsequently, and prior to 1935, plaintiff completed the construction of Transfer Ditch and obtained therefor two direct flow decrees for a total of 60 cubic feet of water.

In 1935 plaintiff filed a statement of claim in the district court of Delta County requesting an "auxiliary" supply of water for the reservoir from Dry Creek. This claim was not based upon proposed or completed enlargement of the reservoir. On the contrary, the capacity of the reservoir was stated to be 3400 acre feet — the same as the original capacity determined by the 1907 decree. In 1937, as a result of this claim and the testimony in support thereof, the reservoir was awarded a decree permitting storage of 2870 acre feet from Dry Creek. This decree also determined the capacity of the reservoir to be 3400 acre feet.

About June 13, 1937, the reservoir dam washed out. During the next two years the dam was rebuilt and the height thereof increased by two feet. However, the original height of the spill-way was not changed until some time in 1940. The reconstruction as completed increased the storage capacity of the reservoir to approximately 4500 acre feet. At no time after 1937 or after the completed reconstruction of the dam did plaintiff seek or obtain a decree based upon the enlarged capacity of the reservoir.

Fruit Growers Reservoir is situated on the channel of a draw known locally as Alfalfa Run. Originally Alfalfa Run was not a stream; however, the diversion of water from both Surface Creek and Dry Creek for irrigation of adjacent land contributes a constant supply of water for Alfalfa Run by return and seepage and a small number of water rights have been decreed from Alfalfa Run.

During several years prior to 1951 approximately 4500 acre feet of water was passed through the reservoir. The evidence does not indicate how much of this was direct flow and how much was stored. In 1951 a controversy arose between plaintiff as owner of Fruit Growers Reservoir and other decree holders on Alfalfa Run. Prior to that time there were no measuring devices to record the flow of water into the reservoir from its various sources as required by C.R.S. '53, 147-7-18. The state engineer, at that time M. C. Hinderlider, ordered plaintiff to install proper measuring devices. Hinderlider did not at that time, or any other time, rule that Fruit Growers Reservoir was entitled to store water in excess of its decreed capacity.

Water Rights for Fruit Growers Reservoir were acquired by the United States shortly before the construction of the present dam. Officials of the Bureau of Reclamation were advised of the controversy between the reservoir and certain holders of decreed rights junior to the 1907 priority concerning the quantity of water which could be stored in the reservoir. On February 28, 1952, bureau officials conferred with Mr. Hinderlider concerning the 1907 and 1937 decrees to the reservoir, the proper distribution of water pursuant to decrees therefor, and the necessity of accurate measurement of water from each source of supply and of storage in the reservoir to avoid controversy with other water users. On March 7, 1952, an attorney for the Bureau of Reclamation wrote a letter to Mr. Hinderlider requesting confirmation of what he stated to be the conclusions reached

at said conference. The pertinent asserted conclusion was to the effect that insofar as three specific junior decree holders from Alfalfa Run were concerned, 3400 acre feet of water could be stored under the 1907 decree and 2870 acre feet could be stored under the 1937 decree. On March 17, 1952, Mr. Hinderlider answered said letter, specifically referring to the subject of the conference as "concerning the water rights of the Fruit Growers Reservoir and claimants below this reservoir on Alfalfa Draw" and stating, "It appears that the conclusions announced in your letter are all correct."

On April 30, 1952, Mr. Hinderlider, the State Engineer, issued an official ruling concerning the amount of water to which the reservoir is entitled, the method of measurement of said water and hold-over storage. Thereafter, water decreed to the reservoir was administered pursuant to the terms of said ruling. In 1955 plaintiff appealed this ruling to the then State Engineer, Mr. Whitten. After taking testimony, defendant Whitten issued his official ruling, as follows:

"1. That the Reservoir is entitled to 3400 acre feet of water awarded under Reservoir Priorities No. 24 and No. H-54, with the limitation of not to exceed 2870 acre feet from Dry Creek.

"2. That the Reservoir shall be operated on a capacity basis as applied from the gage rod rulings, and that the water diverted from Dry Creek into the Reservoir be properly measured and accounted for by means of a measuring device located in the Transfer Ditch.

"3. That any storage remaining in the Reservoir on November 1st shall be charged to the reservoir filling for the ensuing year. The Water Commissioner of Water District No. 40 is herein directed to administer the Reservoir Decrees of the Fruit Grower's Reservoir agreeable to this Ruling.

"The execution of this order shall be held in abeyance until November 1, 1955, to give either of the parties

hereto opportunity to institute legal action should they so elect.

"Dated at Denver, Colorado, this 14th day of October, 1955."

Plaintiff thereafter instituted the instant proceedings seeking to enjoin the enforcement of said ruling. Sixty-four water users on Surface Creek, Hart's Basin, Alfalfa Run and Dry Creek were joined as defendants. All of these parties, with the exception of Durkee Ditch Company, failed to answer, and defaults were entered against them. Durkee Ditch Company has decreed rights from Dry Creek, some junior and some senior to the Fruit Growers decrees.

After hearing evidence and argument, the trial court dissolved the preliminary injunction and entered judgment dismissing plaintiff's complaint.

The judgment contains a special ruling that the statement of claim and the two transcripts of testimony in the 1937 proceeding were admissible in evidence. The court also made the following specific findings:

1. That both the 1907 and the 1937 decrees determined the capacity of the reservoir to be 3400 acre feet.

2. That the claim and testimony in the 1937 proceedings established the fact that the water from Dry Creek was an "auxiliary supply" and "essential in order to fill said reservoir."

3. That under the decrees plaintiff is entitled to fill the reservoir to its capacity of 3400 acre feet.

4. That if the waters from Alfalfa Run and Surface Creek, the original sources of supply, are not sufficient, the reservoir may draw on its 1937 decree from Dry Creek sufficient water to make one filling, but subject, however, to the decrees on those several streams.

5. That the appropriation for a reservoir is measured by the quantity of water it will hold at one filling.

6. That the doctrine of estoppel cannot be invoked against the state engineer acting in his public capacity.

The court's conclusion and order states:

"* * * that the plaintiff has no right to call for water to the detriment of other appropriators in excess of 3,400 acre feet during each storage season. The defendant shall not interfere with the diversion of water for storage during any time when no other appropriator having a decreed right to the use of water from the sources of supply of said reservoir makes or is making a demand for such water. Plaintiff shall cease diverting and storing water after they have diverted and stored a total of 3,400 acre feet in each year at any time when any other owner of decreed rights out of the several sources of supply of such reservoir makes a demand for water out of said sources of supply."

Plaintiff asserts and argues five grounds for reversal, to-wit: 1. That plaintiff's decrees are not now subject to collateral attack; 2. that imported water belongs exclusively to the importer thereof; 3. that the court erred in admitting in evidence the statement of claim and two transcripts of testimony in the 1937 proceeding; 4. that the judgment is unjust and inequitable; 5. that plaintiff is entitled to store the maximum amount of water under each appropriation decree.

1. Plaintiff's general contention that the reservoir decrees are not now subject to collateral attack is based upon four specific grounds. We do not deem it necessary to discuss at length the primary contention, the basic ground thereof, or the many cases cited in support of plaintiff's argument. Plaintiff's primary contention is not founded upon or applicable to the facts herein. The subject action of this review is not an adjudication proceeding. It is an action to enjoin defendant State Engineer from enforcing his official administrative ruling. The basic and essential issue is whether the questioned ruling is a proper construction and interpretation of the reservoir decrees. Determination of this issue made it imperative for the court to construe and interpret the decrees. The vital issue is not the

validity of such decrees but the legal meaning, intendment and effect thereof. The question is not "Are these decrees legal and valid?" The question is simply and solely "What do the decrees mean?" Necessary and proper determination of this basic issue does not constitute a collateral attack on plaintiff's reservoir decrees.

2. Plaintiff contends that imported water belongs exclusively to the importer thereof. The instant case concerns two streams in the same water district, flowing into the Gunnison River before leaving the district. The facts do not indicate that plaintiff has developed or imported water to increase the flow of either stream. The law of developed, foreign or imported water has no application to the facts or the issues here.

3. Plaintiff asserts that the court erred in admitting in evidence defendant's Exhibits 3, 4 and 5. The questioned exhibits are the statement of claim and two certified transcripts of testimony made and given in the adjudication proceedings, wherein plaintiff was awarded the 1937 decree. The claim and the transcripts are basic and essential elements of the adjudication proceedings. A statement of claim is required in all adjudication proceedings, C.R.S. '53, 147-9-8. The statutes also provide that testimony in adjudication suits be reduced to writing duly certified, filed and made a part of the permanent records of the court, C.R.S. '53, 147-9-10. Furthermore, the statute requires the court to make findings of fact in all matters required to be set out in the statement of claim.

█ Plaintiff's action questioned the validity of the ruling of defendant Whitten, asserting, in effect, that such ruling was not proper administration of plaintiff's decrees. Plaintiff claimed the right to store the maximum quantity of water under both the 1907 decree and the 1937 decree. The very nature of plaintiff's action and the claim plaintiff asserted made it imperative for the court to consider, construe and interpret both decrees. Under our law, adjudication proceedings and appropri-

ation decrees are basically and essentially statutory. A water decree is a determination of a specific issue presented to the court in the specific manner prescribed by statute. The statement of claim presents the issue. The decree is limited by the issue it resolves.

*Hinderlider v. Canon Heights Irrigation and Reservoir Company,* 117 Colo. 183, 185 P. (2d) 325, was an injunction action questioning the legality of the administrative acts of the State Engineer and other water officials. Determination of the basic issue therein required construction of a water decree. In the opinion this court pronounced the following fundamental rule for construing water decrees:

"As above noted, this action was tried as a suit for construction of the 1910 decree. The decree is not woven of thin air; it is a determination of a specific issue presented to the court. It is grounded on the facts creating that issue; and, where construction is necessary, it must be construed in the light of the facts which gave it birth and limited by the issue it resolved. *Drach v. Isola,* 48 Colo. 134, 109 Pac. 748; *Arthur Irr. Co. v. Strayer,* 50 Colo. 371, 115 Pac. 724; * * *."

The rule of construction above quoted affords sound and sufficient reason and authority for admitting the exhibits. However, the rule is supported and amplified by other and more specific decisions of this court. We have consistently held that statements of claim and transcripts of testimony in adjudication proceedings are admissible evidence in other actions involving the construction or interpretation of water decrees. In *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 989, this court decided that a statement of claim and an amended statement were properly admitted in evidence. The following language from the opinion is applicable to the facts in the instant case:

"* * * These statements may be likened to a pleading upon which a judgment is based, and they are proper to be introduced along with the decree to enable the

court to interpret or construe the latter in the light of the claimant's own assertion of his demand. Both the law under which this decree was rendered and the decree itself contemplate that no claimant shall be entitled to the use of a quantity of water in excess of that actually needed for the purpose for which the appropriation was made. * * *"

This court also decided the question of admissibility of statement of claim and *transcripts of testimony* in the case of *Colorado Springs v. Yust,* 126 Colo. 289, 249 P. (2d) 151. In the opinion therein the court said:

"* * * Error is further specified to the admission in evidence of protestants' exhibits 2 and 3, being the ditch claim statements which were the basis of the decrees for claimant's said water rights, and to the admission of protestants' exhibit 14, which was the testimony offered at the adjudication proceedings in support of the ditch claim statements in the proceedings in which claimant's said decrees were awarded. All these exhibits were offered, not only for the purpose of challenging the decrees, which was improper, but also for the purpose of showing the use of the water both before and after the decree. * * * We find no error in the action of the trial court in admitting these exhibits."

See also *Drach v. Isola,* 48 Colo. 134, 109 Pac. 748; *Fort Collins Co. v. Larimer & Weld Co.,* 61 Colo. 45, 156 Pac. 140.

The foregoing decisions conclusively determine that no error was committed in admitting defendant's exhibits 3, 4 and 5.

4. Plaintiff contends that the judgment of the trial court is unjust and inequitable. The argument in support of this contention is based upon two grounds: 1. That for many years plaintiff has stored water from both sources and under both decrees in quantities exceeding both the decreed and the physical capacity of the reservoir; and 2, that for many years state engineers and water officials have administered plaintiff's decrees

in such manner as to permit storage of water from both sources and under both decrees in quantities exceeding both the decreed and the physical capacity of the reservoir.

This argument is necessarily based upon the doctrine of estoppel. That doctrine is not applicable to the facts of this case. The basic issue is whether defendant Whitten's ruling and the enforcement thereof is a proper and legal administration of plaintiff's decrees. If the questioned ruling is pursuant to decreed rights, any inequity resulting therefrom cannot operate to alter, modify, diminish or enlarge such rights.

Plaintiff asserts, in effect, that the state engineer is estopped to administer plaintiff's decrees pursuant to the questioned ruling because for many years plaintiff stored quantities of water exceeding the decreed capacity of the reservoir and that such storage was sanctioned, permitted or authorized by other state engineers and water officials. Such storage by plaintiff, even though sanctioned, permitted or authorized by other water officials, could not alter or modify plaintiff's decreed rights. In *Comstock v. Larimer & Weld Co.*, 58 Colo. 186, 145 Pac. 700, it was contended that custom and usage justified a particular method of water distribution. In its opinion this court said:

" * * * And even if the custom and usage alleged were fully and satisfactorily established by competent proof, it would not bind either the water officials, or consumers of water from the same streams in the several other districts of the same water division."

Whitten's action was pursuant to the performance of his statutory duties. In *Handy Ditch Company v. Greeley & Loveland Irr. Co.*, 86 Colo. 197, 280 Pac. 481, this court said:

"The public officials charged with the distribution of water must distribute it according to the decrees therefor."

And further,

" \* \* \* To grant the prayer of plaintiff's complaint as amended would accomplish a revision of such reservoir decrees by indirection; but this is impossible to do, any more than by direction."

■ The doctrine of estoppel cannot be invoked against a government agency acting in its public capacity. *Bennetts, Inc. v. Carpenter,* 111 Colo. 63, 137 P. (2d) 780; *Armstrong v. Driscoll,* 107 Colo. 218, 110 P. (2d) 651.

5. Plaintiff asserts the right to store the maximum quantity of water under each of its reservoir decrees. Otherwise stated, it claims the right to store 3400 acre feet of water under the 1907 decree and 2870 acre feet under the 1937 decree — a total of 6270 acre feet to be stored in a single reservoir with a capacity fixed and determined by both decrees to be 3400 acre feet. Such being the decreed physical facts, plaintiff's claim amounts to an assertion of the right to fill the reservoir more than once a year.

This asserted right must be found in the decrees or result from a proper and legal construction thereof. The decrees measure, limit and define both the nature and extent of plaintiff's rights. Neither decree expressly awards plaintiff the right to refill the reservoir. Consequently, if such right exists it must be implied from the express provisions of the decrees.

We first consider the 1907 decree. This decree is a storage decree unquestionably and unequivocally. It contains findings on all matters required by statute, including the express finding that the capacity of the reservoir is 3400 acre feet. The decree awards claimant the right to store 3400 acre feet of flood waters from Surface Creek and certain waste and seepage water, under and by virtue of appropriation of original construction of the reservoir. This decree does not, expressly or impliedly, award plaintiff the right to refill the reservoir.

The 1937 decree also contains findings on all matters

required by statute, including the express finding that the capacity of the reservoir is 3400 acre feet. The decree awards claimant the right to store in the reservoir 2870 acre feet of water from Dry Creek by diversion through Transfer Creek under and by virtue of original appropriation. This decree does not expressly award plaintiff the right to refill the reservoir.

Construction of the 1937 decree must be limited by the statement of claim (Exhibit 3) and the testimony in support thereof (Exhibits 4 and 5). The statement of claim states the capacity of the reservoir is 3400 acre feet. This statement also recites that "Said reservoir also derives water for storage purposes from Surface Creek by means of Alfalfa Ditch and Old Reliable Ditch, but in experience it has been found that *this auxiliary supply of water from Dry Creek is essential in order to fill said reservoir and claim is made in this adjudication proceeding to 3400 acre feet of water from the flood waters of Dry Creek in order to fill said reservoir.*" (Emphasis supplied.) This is an express and unequivocal claim for such "auxiliary" or supplemental water as may be "essential in order to fill said reservoir" and clearly is not a claim for water to refill the reservoir.

This view is fully supported by the transcripts of testimony given in the adjudication proceedings. Exhibit 4 contains the following pertinent statements: That the present storage capacity of the reservoir is 3400 acre feet; that Transfer Ditch serves a dual purpose — "to fill the reservoir and for direct flow"; that Alfalfa Ditch was used "in connection with filling Fruit Growers Reservoir"; that it is essential to use water from Transfer Ditch to fill Fruit Growers Reservoir in ordinary years and that such water has been used for such purpose for ten years; that in 1935, 2870 acre feet of water from Dry Creek through Transfer Ditch was "run into the Fruit Growers Reservoir and then run out"; and that this "auxiliary supply" of water from Dry Creek by means of Transfer Ditch is "necessary" to fill the reservoir.

Exhibit 5 contains the following pertinent testimony: That Transfer Ditch carries water both for direct irrigation and for storage in Fruit Growers Reservoir; that the primary use of Transfer Ditch was for direct irrigation; that the storage capacity of the reservoir is 3400 acre feet; that it is necessary to use Transfer Ditch to fill the reservoir; that the reservoir cannot be filled without using water from Dry Creek; that the reservoir has not been filled during the last four years; that in 1935, 2870 acre feet of Dry Creek water was run directly through the reservoir for direct irrigation and not for storage; and that in the past the Transfer Ditch was used exclusively for the purpose of direct irrigation.

Plaintiff's statement of claim and its testimony in support thereof clearly establishes both the purpose and the extent of the right claimed in the adjudication proceedings and granted by the 1937 decree. That right was and is the right to store in Fruit Growers Reservoir such quantity of water from Dry Creek, not to exceed 2870 acre feet, as may be necessary or essential in order to fill said reservoir to its full capacity of 3400 acre feet. Such right cannot be construed to be the right to store 6270 acre feet of water in a reservoir having a physical and decreed capacity of only 3400 acre feet. Nor can such right be construed to permit plaintiff to refill the reservoir. The right to refill the reservoir was not asserted in the statement of claim; was not supported by the testimony, and was not awarded by the 1937 decree.

We do not deem it necessary to consider the general or statutory law applicable to water decrees. The law as pronounced in the following cases is both applicable and determinative of the issue herein.

In *Windsor Reservoir and Canal Company, et al. v. Lake Supply Ditch Company, et al.,* 44 Colo. 214, 98 Pac. 729, the right to refill a reservoir was considered. At page 223 of the opinion the court states:

" * * * The question is whether, during the same season and before junior reservoirs are filled once, a senior

reservoir may, under our statute, have a decree allowing more than one filling on the same priority or appropriation of water for storage. Appellee says there is no express provision of the statute to the contrary, and that under our constitution, which allows an appropriation either by means of a ditch or canal for immediate irrigation, or a reservoir for storage of whatever flow is diverted, or stored, and beneficially used, it necessarily follows, when such right is claimed in the filing statements, as is the case in at least one of its statements, and the facts show, as it is claimed they do here, that a double filling has been enjoyed, a decree therefor is proper. We cannot concur in this reasoning. Rather do we think the one who makes such a claim should be required to put his finger on some affirmative enactment so providing. We have been cited to no such authority in our statute, and can find none. By necessary construction, the statute which provides for these decrees forbids the allowance of more than one filling on one priority in any one year."

While the Windsor case involves the storage of water from only one source of supply, we nevertheless regard the holding there as decisive of the right to refill the reservoir whether the sources of supply be single, dual or multiple.

In *Holbrook Irrigation District v. Fort Lyon Canal Company,* 84 Colo. 174, 269 Pac. 574, priorities were awarded to several reservoirs. These reservoirs were supplied by various ditches with water from the Arkansas River and from several other streams and creeks. The trial court awarded the canal company various decrees from each of the streams involved. This court ordered the decrees modified so as to limit the reservoirs to one annual filling. At page 192 of 84 Colo. the court said:

"The decrees to the several reservoirs should have been limited to one annual filling for each reservoir. Windsor Res. & Canal Co. vs. Lake Supply Ditch Co., 44 Colo. 214, 98 Pac. 729."

Regarding Horse Creek Reservoir, at page 196:

"There will be allowed but one annual filling of said reservoir, from whatever sources the water may be derived."

As to Adobe Reservoir, at page 196:

"There will be allowed but one annual filling of said reservoir, from whatever sources the water may be derived."

 The Windsor and Holbrook cases state the law in effect when plaintiff was awarded its decrees for Fruit Growers Reservoir, to the effect that a reservoir is limited to one annual filling from whatever source the water may be derived, and that the decreed capacity of a reservoir controls and limits the amount of water that may be stored therein. Applying the rule of these cases to the facts before us, plaintiff's claim of the right to store the maximum amount of water under each decree is entirely without merit.

We find no prejudicial error in the record, therefore, the judgment is affirmed.

Mr. Justice Frantz and Mr. Justice Doyle concur.