The NORTH STERLING IRRIGATION DISTRICT, Plaintiff–Appellant

City of Boulder; Centennial Water & Sanitation District; and Pawnee Wells Users, Inc.; Intervenors–Appellants

v.

Harold D. SIMPSON, P.E., in his capacity as the Colorado State Engineer and James R. Hall, P.E., in his capacity as the Division Engineer in and for Water Division 1, Defendants–Appellees.

The City of Westminster; Irrigationists' Association Water District 1; The Northern Colorado Water Conservancy District; Bijou Irrigation Company; Bijou Irrigation District; Central Colorado Water Conservancy District; Groundwater Management Subdistrict of the Central Colorado Water Conservancy District; The Well Augmentation Subdistrict of the Central Colorado Water Conservancy District; The Lower South Platte Water Conservancy District; The Cache La Poudre Irrigating Company; The Cache La Poudre Reservoir Company; Western Mutual Ditch Company; Farmer's Independent Ditch Company; Campbell Development, Inc.; Fox Acres Community Services Corporation; The City of Aurora; Riverside Irrigation District; Riverside Reservoir and Land Company; Fort Morgan Reservoir & Irrigation Company; and The Jackson Lake Reservoir & Irrigation Company, Intervenors–Appellees.

No. 08SA29.

Supreme Court of Colorado, En Banc.

March 2, 2009.

Buchanan and Sperling, P.C., Timothy R. Buchanan, Veronica A. Sperling, Arvada, Colorado, Attorneys for The North Sterling Irrigation District, City of Boulder, Centennial Water and Sanitation District, and Pawnee Well Users, Inc.

John W. Suthers, Attorney General, Devin R. Odell, Assistant Attorney General Denver, Colorado, Attorneys for the State and Division Engineers of Colorado.

Brownstein, Hyatt, Farber, & Schrek, L.L.P., Steven O. Sims, Molly K. Strablizky, Denver, Colorado, Attorneys for Intervenor–Appellee City of Aurora.

Hill & Robbins, P.C., Mark J. Wagner, Denver, Colorado, Attorneys for Intervenors–Appellees Riverside Irrigation District and Riverside Reservoir and Land Company.

Vranesh & Raisch, L.L.P., Michael D. Shimmin, Stuart B. Corbridge, Boulder, Colorado, Attorneys for Intervenors–Appellees Bijou Irrigation Company and Bijou Irrigation District.

Alperstein & Covell, P.C., Cynthia F. Covell, Andrea L. Benson, Denver, Colorado, Attorneys for Intervenor–Appellees Fort Morgan Reservoir & Irrigation Company and Jackson Lake Reservoir & Irrigation Company.

Lind Lawrence & Ottenhoff, L.L.P., Kim R. Lawrence, Bradley C. Grasmick, Windsor, Colorado, Attorneys for Intervenors–Appellees Central Colorado Water Conservancy District & its Groundwater Management & Well Augmentation Subdistricts, Western Mutual Ditch Company and Farmers Independent Ditch Company.

Trout Raley Montano Witwer & Freeman, P.C., Robert V. Trout, Douglas M. Sinor, Gabriel Racz, Denver, Colorado, Attorneys for Intervenor–Appellee Northern Colorado Water Conservancy District.

Justice RICE delivered the Opinion of the Court.

The North Sterling Irrigation District ("NSID") owns storage water rights in the North Sterling Reservoir on the South Platte River. At issue is whether the State and Division Engineers for Water Division No. 1 (the "Engineers") may impose on NSID a fixed water year, from November 1 to October 31, for purposes of administering the one-fill rule. We hold that, because NSID's storage decrees are silent on the issue of how diversions are to be accounted for under the one-fill rule, the Engineers have the authority to implement a fixed water year for the purpose of administering NSID's storage rights. We also affirm the water court's conclusion that the fixed water year does not itself interfere with NSID's decreed storage rights, but is merely the administrative mechanism by which the one-fill rule lawfully limits those rights.

## I. Facts and Proceedings Below

The dispute giving rise to this litigation developed between 2001 and 2004, when NSID began to have trouble placing calls for

water under its water storage rights. One early-fall request for water was denied by the water commissioner, and another prompted a letter from the division engineer stating that the call would be honored only up to 3,386 acre-feet, bringing the relevant priority to its maximum fill for the year. When NSID inquired why its calls were not being honored, the Engineers stated that NSID's diversions under its storage rights were limited based on a November 1 to October 31 water year, and that after NSID obtained one annual fill of its decreed rights, the Engineers would not honor calls until the administrative water year began anew on November 1.

Although the Engineers claimed that the November 1 water year had been in place since as early as 1936, NSID claimed it had never operated with a fixed date for commencement of diversions into its reservoir. From NSID's point of view, its storage rights had always operated on a variable calendar based on the annual requirements of the irrigation season. NSID generally finished releasing water for irrigation sometime in September or October, at which time the water in the reservoir would reach its low point. On whatever date the low point occurred, NSID would close its outlet canal and begin diverting and storing water for the next year's irrigation operations. NSID referred to this as "low-point administration," which it claimed had been the operable regime for its storage rights since 1911.

By contrast, the November 1 policy first appeared in a 1936 letter addressed to "all division engineers and water commissioners" from then-state engineer M.C. Hinderlider. The "Hinderlider Letter" sought to establish a statewide fixed water year from November 1 to October 31 to permit a more "practicable and efficient administration" of storage rights according to the one-fill rule. The extent to which the Hinderlider Letter was circulated is unclear, and several former water officials in District 1 who eventually testified stated that they were unaware of the letter until this case. Regardless of the origin of the November 1 policy, the District 1 officials claimed that storage rights in District 1 had always been administered according to the November 1 year. Evidence of the November 1 policy also appears periodically in public records, including two biennial reports of the state engineer to the governor, a 1937 ruling by the state engineer, and several storage right decrees. Finally, a 1989 letter from a former manager of NSID to the division engineer objects to the November 1 policy, establishing that the policy was being applied to NSID's rights at that time.

The discrepancy in NSID's and the Engineers' historical perspectives was made possible by the formerly loose administration of the South Platte River. Prior to recent drought years, because of abundant supply and relatively low demand, officials were rarely asked to honor or record a call. The administration was particularly loose in the non-irrigation season, when common practice among rights-holders was to keep calls off the river. Therefore, NSID and the Engineers could feasibly have maintained two parallel accounting systems. Even if NSID was *operating* on the basis of the low-point water level, it was not calling for and receiving water based on those operations. Thus, the Engineers were not *administering* NSID's rights using that system. The Engineers did not dispute that NSID usually commenced diverting water in September and October, but stated that these diversions historically took place under free river conditions, when natural supply rendered official administration unnecessary. In times of short supply, the Engineers maintained that they could not honor NSID's call for water prior to November 1 if NSID had already obtained its annual fill.

On June 16, 2005, NSID brought this action to contest the Engineers' application of the November 1 policy to NSID's storage rights. NSID filed a Complaint for Declaratory Judgment pursuant to section 13–51–101 et seq., C.R.S. (2008), and C.R.C.P. 57, seeking a determination regarding whether Colorado law authorizes the Engineers to administer NSID's water rights according to a fixed water year. The City of Boulder, Centennial Water and Sanitation District, and Pawnee Well Users, Inc. intervened as Intervenors–Plaintiffs. The Engineers and six-

teen other parties filed responsive pleadings to the complaint.

The water court issued three written orders over the course of the case. On May 2, 2007, the court entered an order regarding the parties' motions for preliminary determination of questions of law. The court rejected NSID's contention that the Engineers had imposed an invalid "storage season" limitation on NSID's in-priority diversions of water. The court declared that the Engineers had rather designated a "water year" to administer NSID's storage rights, a year-long administrative period under which a date certain is selected when diversions begin to be credited towards a storage right's annual fill. The court concluded that, because NSID's storage decrees are silent on the issue of how diversions are to be accounted for under the one-fill rule, the Engineers had the authority to develop an administrative policy on how to effect the one-fill limitation. However, the court stated that it was an unresolved issue of material fact whether the one-fill rule could only be administered through the use of the fixed water year, or whether it could instead be effected through low-point administration, as claimed by NSID.

On August 15, 2007, the court entered summary judgment on three of NSID's claims, leaving only the issue of what administration governed NSID's storage rights for the purpose of implementing and enforcing the one-fill rule.[1] The court then conducted a five-day trial in September 2007, with NSID claiming that its storage rights should be administered pursuant to low-point administration, and the Engineers claiming that the rights should be administered pursuant to a fixed November 1 water year. The court heard evidence on the historical operation of the reservoir by NSID, the historical administration of NSID's water rights by the Engineers, and the operation and administration of similarly situated reservoirs.

The judge ultimately entered an order *nunc pro tunc* on December 11, 2007, holding that NSID is not entitled to low-point administration and affirming the Engineers' au-

thority to implement the November 1 water year to administer NSID's storage rights. This appeal followed.

## II. Standard of Review

The purpose of a declaratory judgment is to afford relief from uncertainty with respect to rights, status, and other legal relations. § 13–51–102, C.R.S. (2008). We review de novo the water court's interpretation and declaration of Colorado law. *See Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 58 (Colo. 2003). Factual determinations made by the water court in order to declare rights, status, or legal relations are binding on appeal unless so clearly erroneous as to find no support in the record. *See City of Black Hawk v. City of Central*, 97 P.3d 951, 956 (Colo. 2004).

## III. Analysis

### A. Authority of the State and Division Engineers

 The General Assembly has charged the state engineer and division engineers with administering, distributing, and regulating the waters of the state. § 37–92–501(1), C.R.S. (2008). Water officials must distribute water according to the order of priority as fixed by judicial decrees. *Orchard City Irr. Dist. v. Whitten*, 146 Colo. 127, 137–38, 361 P.2d 130, 135 (1961). Direct flow water rights and storage water rights are entitled to administration based on their priority, regardless of the type of beneficial use for which the appropriation was made. *See People ex rel. Park Reservoir Co. v. Hinderlider*, 98 Colo. 505, 507, 57 P.2d 894, 895 (1936) ("The test of priority of right is beneficial use, not means of application."). The state engineer is authorized to adopt rules and regulations to assist in, but not as a prerequisite to, the fulfillment of these duties. § 37–92–501(1). The state and division engineers are also authorized to curtail diversions that contravene applicable law. § 37–92–502, C.R.S. (2008).

---

1. NSID's claims included issue preclusion, claim preclusion, an unconstitutional taking of proper-

ty, and a due process violation. None of these claims is before us on appeal.

One such applicable law is the "one-fill" limitation on water storage rights. Colorado law dictates that a reservoir is limited to one annual filling, according to its decreed capacity. *Orchard City Irr. Dist.,* 146 Colo. at 142, 361 P.2d at 137; *Windsor Reservoir & Canal Co. v. Lake Supply Ditch Co.,* 44 Colo. 214, 223, 98 P. 729, 733 (1908). Where a decree expressly addresses how diversions are to be accounted for under the one-fill rule, the water officials must administer the storage right pursuant to the decree. *Orchard City Irr. Dist.,* 146 Colo. at 137, 361 P.2d at 135 (" 'The public officials charged with the distribution of water must distribute it according to the decrees therefor.' " (quoting *Handy Ditch Co. v. Greeley & Loveland Irr. Co.,* 86 Colo. 197, 200, 280 P. 481, 482 (1929)) ). However, where, as here, storage decrees are silent on the issue, the state engineer and division engineers are bound by their statutory mandate to account for, and if necessary, curtail diversions that violate the one-fill rule.

On the basis of the foregoing, the water court held that the Engineers are vested with the authority to institute a fixed water year in order to fulfill their statutory function of administering NSID's storage rights pursuant to law. According to the court, by instituting a fixed water year beginning November 1, the Engineers are able to keep track of how much water has been diverted during a one-year period. Once the holder of a water storage right has filled its right once, the right is satisfied and the Engineers can refuse to honor a call during the remainder of that one-year period. The court concluded that such fixed-year administration was necessary to protect against the enlargement of NSID's storage rights beyond its one fill in a given year.

NSID contests the water court's determination, claiming that imposition of a fixed water year constitutes unlawful interference with its decreed rights. NSID argues that its water storage rights have operated pursuant to low-point administration for almost one hundred years, and that it is entitled to continue to operate as it has historically. We reject these claims and affirm the water

court's holding that the November 1 water year is applicable to NSID's storage rights.

## B. NSID's Rights Are Constrained By The One–Fill Rule, Not The Fixed Water Year

We have held that water courts "cannot fasten a limitation on a vested right not attached to it by the decree itself, or by any constitutional or statutory provision or decision of this court." *Comstock v. Larimer & Weld Reservoir Co.,* 58 Colo. 186, 203, 145 P. 700, 705 (1914). NSID argues that imposition of a fixed water year interferes with its decreed water rights by restricting NSID to a "storage season" or a "season of diversion," a type of restriction this court has previously rejected as unlawful. NSID also claims that the fixed water year interferes with its decreed rights by preventing it from commencing diversions as soon as possible after the end of the irrigation season. By purportedly forcing NSID to delay diverting water until November 1, NSID asserts that the fixed water year deprives it of the best opportunity to reach its fill before being called out by senior water rights. NSID argues that it needs low-point administration in order to preserve its decreed rights, allowing NSID to commence diversions on a variable basis as it has done historically. We are not persuaded by NSID's claims. We hold that the fixed water year does not itself impose a limit on NSID's decreed storage rights, but is merely the administrative mechanism by which the one-fill rule lawfully limits those rights.

We first reject NSID's argument that the Engineers' fixed water year imposes an unlawful "season of diversion" on NSID. In *Comstock,* we reversed a court order requiring the state and division engineers to divide the administrative water year into two seasons, one for direct irrigation and the other for the storage of water. 58 Colo. at 203, 145 P. at 705. Larimer & Weld Reservoir Co. ("LWRC") had obtained an order enjoining the division engineer from enforcing a call made by direct irrigators for water during what LWRC considered the "storage season." *Id.* at 189, 145 P. at 701. LWRC sought a decree dictating that, from Septem-

ber 15 to April 15, water officials would furnish water solely for storage, confining irrigation rights to the remainder of the year. *Id.* at 192–93, 145 P. at 702. In other words, the decree would require that water rights no longer be administered based solely on priority, but also according to the type of beneficial use for which the water was being diverted. *Id.* Neither LWRC's decree nor the decrees of its direct-irrigator opponents contained such a limitation. *Id.* at 202, 145 P. at 705. Nonetheless, LWRC claimed that "for more than twenty years ... the waters of said river and its tributaries [had] been, by common consent, so used." *Id.* at 192–93, 145 P. at 702.

We reversed the water court, holding that because the decrees of the direct irrigators were without limitation as to time of use, the court could not arbitrarily fix a season when water for direct irrigation may be used. *Id.* at 203, 145 P. at 705. We stated:

> To now judicially declare that the users thereunder can divert and apply water for the irrigation of their lands and crops from April 15th to October 1st of each year only, is in effect a modification of decrees vesting property rights, which have been used and enjoyed, without such limitation, for upwards of 25 years.

*Id.* To the argument regarding custom and usage in LWRC's district, we replied that water officials cannot be bound by such practice. *Id.* at 202, 145 P. at 705. Water must be distributed throughout a division according to priorities for the entire drainage, we stated, not according to custom or agreement in a particular district. *Id.*

The Engineers' fixed water year does not impose a storage season or a season of diversion on NSID. In contrast to the facts in *Comstock,* where direct irrigators were only allowed to divert water during five months of the calendar year, NSID may divert water in-priority any day of the year, as long as the right has not exceeded the volumetric limitation of the one-fill rule. Any limitation on NSID's storage rights is imposed by Colorado's one-fill rule, not the Engineers' fixed

water year. Because NSID has no legal right to divert water in excess of its annual fill, the administrative policy that prevents it from doing so cannot be said to modify NSID's decreed property rights.

We likewise disagree with NSID's related claim that the fixed water year unlawfully interferes with its decreed rights by purportedly delaying the times of its diversions and diminishing its available water supply as a result. As stated above, NSID may call for water any day of the year under priorities that have not been previously satisfied during that year. The Engineers' policy does not require NSID to delay calls until November 1 unless the reservoir has already received its fill for the year, in which case there can be no claim of legal injury. As a practical matter, NSID's complaint that a slow fill-rate makes it unlikely the reservoir can obtain its fill between November 1 and the start of the irrigation season is, in effect, an admission that NSID will typically be entitled to divert water the subsequent September and October, recharging the reservoir before irrigation begins again.[2] In sum, the fixed water year does not restrict the commencement of post-irrigation diversions to November 1 unless NSID is calling for water in excess of its decreed storage rights.

We note finally that while the fixed water year does not unlawfully constrain NSID's decreed water rights, low-point administration has the potential to unlawfully enlarge them. As the water court found, low-point administration provides no predictability concerning the length of NSID's annual water year. If a reservoir reaches its low point less than twelve months after the previous low point, the reservoir has the ability to obtain a second annual filling to which it is not legally entitled. This court has previously recognized that such a variable year can provide inadequate protection to the rights of junior water users. *Matter of Applications for Water Rights of Upper Gunnison River Water Conservancy Dist.,* 838 P.2d 840, 852 (1992) ("[T]he storage fill can be expanded by allowing the reservoir to take additional stor-

---

2. Although it is of no significance to NSID's legal rights, even when NSID meets its annual fill prior to November 1, NSID does not have to stop diverting unless water is in short supply; the fixed water year has no impact on NSID's ability to divert under free river conditions.

age after the first fill has occurred but prior to the end of a twelve-month cycle."). The water court made no finding concerning whether NSID's low-point administration ever resulted in a violation of the one-fill rule. Nonetheless, we cannot conclude that NSID is legally entitled to a form of administration that offers NSID the ability to enlarge its fill at the expense of junior users. We thus affirm the water court's holding that NSID has no legal right to low-point administration.

## C. Historical Operation and Administration of NSID's Storage Rights

NSID contests the November 1 water year on the basis that it purportedly changes the way its rights have been officially administered in the past, and also that it purportedly conflicts with NSID's own past operation of its rights. NSID challenges the historical existence of the November 1 policy, asserting that the Engineers only recently instituted the policy in order to make water available for junior water rights that would otherwise be called out by NSID. Even if the November 1 policy did exist before, NSID argues that the Engineers "acquiesced" to low-point administration by allowing NSID to operate on a low-point basis for nearly one hundred years. NSID claims that it is legally entitled to administration of its rights in a manner consistent with the operations that gave rise to those rights.

We affirm the water court's finding that water officials have historically administered NSID's rights consistent with a fixed water year. Even if the fixed water year represented new policy, NSID fails to demonstrate how legal injury would flow from a change in administrative policy. We thus reject NSID's claim regarding the historical administration of its rights. We likewise are not persuaded by NSID's claim that its own historical operation on a low-point basis precludes the Engineers from implementing a fixed water year. In light of our holding that the November 1 year does not interfere with NSID's rights as decreed, and because NSID has not obtained any adjudication for enlarged storage rights, NSID's claim that the November 1 policy unlawfully conflicts with its historical operations must fail.

### 1. Historical Administration

■ We first affirm the water court's finding that, although NSID has historically operated the reservoir on a low-point basis, its rights have been administered consistent with a fixed, November 1 water year. Although evidence of the official administration of NSID's rights is sparse, the water court's conclusion has record support and we are thus bound by it. *See City of Black Hawk,* 97 P.3d at 956. The historical basis of the November 1 policy is evidenced by the annunciation of the policy as early as 1936 in the Hinderlider Letter and by numerous references to the policy in state government records. Our own caselaw recognizes the November 1 date as representing the generally accepted start-date for the administrative water year. *Bd. of County Comm'rs of County of Arapahoe v. Crystal Creek Homeowners Ass'n,* 14 P.3d 325, 343–44 (Colo. 2000); *Upper Gunnison,* 838 P.2d at 852.

We agree with the water court that any discrepancy in the record between the November 1 year and operations maintained by NSID can be explained by historically loose administration on the South Platte River prior to 2002. Because officials were rarely asked to honor or record a call, NSID and the Engineers were able to maintain two parallel accounting systems: NSID's accounting system for reservoir operations based on the irrigation season, and the Engineers' accounting system for administration based on the November 1 water year. Current and former Division 1 water officials testified at trial that, to the extent they administered NSID's rights, they applied the November 1 policy. With the possible exception of one instance in 1978, records of NSID's historical diversions are consistent with a November 1 water year. A 1989 letter from a former manager of NSID to the division engineer objects to the November 1 policy, establishing that the policy was in effect at least by that time. These facts refute NSID's contention that the Engineers recently initiated the November 1 water year for the benefit of junior water rights.

Because NSID's rights have historically been administered consistent with a fixed water year, NSID has not demonstrated any legal injury associated with a change in administrative policy. In any event, such a claim of injury would not be cognizable, as NSID's decrees do not address how diversions are to be accounted for under the one-fill rule. Where storage decrees are silent with respect to the administration of the one-fill rule, the Engineers have authority under sections 37–92–501 and 502 to determine how to administer Colorado's one-fill mandate. "In times of short supply, water users depend on the Engineers to curtail undecreed uses and decreed junior uses in favor of decreed senior uses." *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1149 (Colo.2001). Here, the Engineers have implemented a fixed water year in order to prevent the undecreed use of water in excess of the one-fill rule and thereby attain the security of other adjudicated water rights. This action is within the authority conferred upon them by law.[3]

### 2. Historical Operation

■ NSID claims that its nearly one hundred years of low-point operation preclude the Engineers from implementing a November 1 water year. NSID argues that the Engineers "acquiesced" to low-point administration by allowing NSID to operate on that basis historically.

■ Without an adjudication of rights associated with its historical operations, NSID's claim fails. Water officials are not bound to administer water rights according to custom. As we stated in *Comstock:*

> [U]sers and consumers of water ... in one district cannot make and apply regulations in the administration of their priorities according to their own interpretation of them, and to meet their needs as they think they should be met; but the waters of a division must be distributed to all consumers under the uniform rule provided by law.

58 Colo. at 202, 145 P. at 705. *See also Orchard City Irr. Dist.*, 146 Colo. at 138, 361 P.2d at 135 (stating water officials' duty is to distribute the waters of a stream according to the decreed priorities therein). In order to viably claim that the November 1 year unlawfully conflicts with its historical operations, NSID would have to demonstrate that those operations gave rise to rights beyond those decreed. Because the one-fill rule is an implied limitation on all storage decrees, NSID's historical operations could not give rise to a right to divert in excess of one annual fill. *See Orchard City Irr. Dist.*, 146 Colo. at 142, 361 P.2d at 137; *Windsor*, 44 Colo. at 223, 98 P. at 733. But even if NSID could make that showing, it would need to have its rights adjudicated in order to enforce them. As we held in *Empire Lodge*, "Administrative action, forbearance of enforcement, or State Engineer acquiescence in water use practices does not substitute for judicial determination of use rights." 39 P.3d at 1156–57. "Those making water uses must obtain a decree adjudicating their rights if they desire to have standing to enforce them." *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson*, 990 P.2d 46, 58 (Colo.1999). We thus are not persuaded by NSID's claim that its historical operations preclude the Engineers from implementing a November 1 water year.

### D. Intervenors–Plaintiffs–Appellants

The City of Boulder, Centennial Water and Sanitation District, and Pawnee Well Users,

---

3. The water court conducted an inquiry into the past administration of NSID's rights in order to determine how the one-fill rule should be administered. This inquiry appears to suggest that the Engineers' authority to set administrative policy is limited by their past administrative practices. It is true that evidence of administrative interpretation may be admitted to shed light on a decree's ambiguous language or the uncertain intent of a decree's drafters. *See, e.g., South Adams Water & Sanitation Dist. v. Broe Land Co.*, 812 P.2d 1161, 1168 (Colo.1991); *Luis Coppa and Son v. Kuiper*, 171 Colo. 315, 323, 467 P.2d 273, 277 (1970); *Hassler v. Fountain Mut. Irr. Co.*, 93 Colo. 246, 248, 26 P.2d 102, 102 (1933). However, past administrative practice does not give rise to a right to have water administered in a certain way. "Our state legislature and courts ... have never accepted the proposition that water officials may determine the water rights of citizens; this is a judicial function under the adjudication statutes." *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson*, 990 P.2d 46, 58 (Colo.1999).

Inc. ("Intervenors") intervene on NSID's behalf to assert that a change in administration of NSID's water rights would change the timing of NSID's calls and inhibit their own diversions as they wait for the NSID rights to be satisfied. Intervenors argue that they are entitled to the maintenance of the stream conditions existing at the time of their appropriation. *See Colo. Water Conservation Bd. v. City of Central,* 125 P.3d 424, 434 (Colo. 2005). This argument is predicated on the claim that the fixed water year will create a change in the historical pattern of diversions. Because we affirm the water court's conclusion that NSID's rights have historically been administered consistent with the November 1 year, any change in stream conditions in this case arises from increased calls and reduced supply on the South Platte River, not from a change in administrative policy. Furthermore, because we hold that any limitation on NSID's storage rights is imposed by Colorado's one-fill rule, not the November 1 water year, Intervenors' claims of derivative injury to their own water rights cannot form the basis of a valid contest to the Engineers' authority.

■ Intervenors also urge us to reverse the water court's determination that NSID is not entitled to low-point administration on the basis that several of their own municipal reservoirs operate on a low-point basis, allegedly without consequence. According to Intervenors, by allowing the continued operation of municipal reservoirs on a low-point basis while NSID's storage reservoir is administered on a fixed water year, the Engineers elevate some water uses over others, a concept this court has long rejected. *See, e.g., Park Reservoir,* 98 Colo. at 507, 57 P.2d at 895. Intervenors assert that they have reported data reflecting low-point operation to state water officials for years, and those officials have not requested them to select fixed starting dates or expressed concern about the difficulty of using low-point administration. However, as we note above, water officials are not bound by custom. *Comstock,* 58 Colo. at 202, 145 P. at 705. Furthermore, the acquiescence of water officials does not determine the water rights of citizens. *Santa Fe Trail Ranches,* 990 P.2d at 58. Thus, we conclude that the Engineers cannot be bound to administer NSID's water rights according to Intervenors' operations.

## IV. Conclusion

In sum, the Engineers did not act in excess of the authority conferred upon them by law to administer waters in accordance with decreed rights and the one-fill rule. Because NSID's storage decrees are silent on the issue of how diversions are to be accounted for under the one-fill rule, the Engineers have the authority to implement a fixed water year for the purpose of administering NSID's storage rights. We affirm the water court's conclusion that the fixed water year does not unlawfully interfere with NSID's decreed rights, but rather prevents NSID from calling for water in excess of those rights.