Concerning the Application for Water Rights of Upper Yampa Water Conservancy District in the Yampa River or its Tributaries in Routt and Moffat Counties, Colorado,

UPPER YAMPA WATER CONSERVANCY DISTRICT, Applicant–Appellant

v.

Dick WOLFE, State Engineer and Erin Light, Division Engineer, Water Division 6, Opposers–Appellees.

No. 09SA352.

Supreme Court of Colorado, En Banc.

June 27, 2011.

Weiss & Van Scoyk, LLP, Robert G. Weiss, Steamboat Springs, Colorado, Balcomb & Green, P.C., David C. Hallford, Scott A. Grosscup, Glenwood Springs, Colorado, Attorneys for Applicant–Appellant.

John W. Suthers, Attorney General, John Cyran, First Assistant Attorney General, Scott Steinbrecher, Assistant Attorney General, Denver, Colorado, Attorneys for Opposer–Appellees.

Moses, Wittemyer, Harrison and Woodruff, P.C., Timothy J. Beaton, Aaron S. Ladd, Boulder, Colorado, Julie A. Rech, Westminster, Colorado, Attorneys for Amicus Curiae Tri–State Generation and Transmission Association, Inc.

Justice EID delivered the Opinion of the Court.

In 2006, the Upper Yampa Water Conservancy District (the "District") filed an application for absolute water rights, based on their conditional water rights on Four Counties Ditch Number 3 ("Four Counties Rights"). The State Engineer and Division Engineer, Water Division 6 (the "Engineers") opposed the application and moved for summary judgment. The water court denied the Engineers' motion, but ruled as a matter of law that in order to perfect a conditional water storage right, the District must show "actual" beneficial use of a specific amount of water. The water court additionally held that the District must show that it diverted and put to beneficial use water in excess of its existing absolute decrees.

The District acknowledged that it could not show that it had, at the time of its application, diverted in excess of its existing decrees at the alternate point of diversion. The water court subsequently granted the Engineers' motion for summary judgment and denied the District's application.

The District now appeals, and we affirm. We hold that in order to perfect a conditional water right that allows storage, an applicant must show actual storage and actual beneficial use of a specific amount of water. The applicant must also show that it in fact appropriated water in excess of its existing absolute decrees allowing for storage; in other words, it must show that it has exhausted its absolute rights before its conditional rights can be perfected.

**I.**

At issue in this case are the Four Counties Rights, which were initially decreed on March 30, 1964, with an appropriation date of June 2, 1958. The initial decree included headgates five, six, and nine. The decree was amended on September 8, 1970. A planned enlargement and extension of Four Counties Ditch Number Three (encompassing headgates twenty-two and twenty-three) resulted in the decree of further conditional water rights on May 30, 1972, with an appropriation date of May 20, 1963. As originally decreed, these rights could have diverted in different amounts, from thirty different points of diversion and from several different streams tributary to the Yampa River.

In 1978, in case number W–1091–76, the water court changed the place of use, and added alternate points of diversion and places of storage within the Yampa River drainage, as well as adding to the beneficial uses of the Four Counties Rights. Notably,

the decree allowed storage at Stagecoach Reservoir. This decree did not impose volumetric limits on the water rights, but rather only limited the rates of flow to the amount of water available at the original points of diversion less deductions for in-stream losses.

In 1992, the District filed an application to make a portion of the Four Counties Rights absolute. A decree was entered in 1994, case number 92CW26, that confirmed absolute water rights for that water physically and legally available at the original point of diversion. The decree found that these rights were used to fill Stagecoach Reservoir, beginning in 1988. The decree did not state a volumetric amount, but rather decreed the amount of water at the flow rate calculated at the original point of diversion.

In 1995, the District again filed an application to make an additional portion of the Four Counties Rights absolute. In October 1997, the water court entered a decree, case number 95CW116, making an additional portion of the Four Counties Rights absolute. This decree included headgates three, four, ten, and eleven. Like the 1994 decree, the water court found that these rights had been used to fill Stagecoach Reservoir. The decree also did not state a volumetric amount, but instead decreed the amount of water at a flow rate at the original point of diversion. Neither the 1994 nor the 1997 decrees included findings that the water had been released for beneficial use. The total flow rate made absolute for the Four Counties Water Rights Reservoir is 151 cubic feet per second ("cfs"). The flow rate is allowable for storage in Stagecoach Reservoir.

On November 30, 2006, the District filed an application, which forms the basis of the current dispute, to make the remainder of the Four Counties Rights absolute. The application was based on inflow into Stagecoach Reservoir on June 9, 2006. On that date, inflow exceeded outflow and the District stored some of the water for an undetermined length of time. At the time of the application, water was physically and legally available at the original points of diversion for each of the Four Counties Rights listed in the application. The rate at which the Dis-

trict stored water on June 9, 2006 was less than the total rate of flow decreed for the water rights made absolute in the 1994 and 1997 decrees—i.e., 151 cfs.

John Fetcher, manager of the District, submitted an affidavit to the water court stating that the stored water was applied to the beneficial uses within the Stagecoach Reservoir in 2006; these beneficial uses were recreation and hydropower generation. In addition, Fetcher stated that the water "may be applied" to aesthetic, piscatorial, and wildlife uses. In its application for an absolute decree for storage, the District stated that the stored water may be applied to domestic, municipal, irrigation, industrial, mining, power, and a variety of augmentation purposes.

The Engineers opposed the application and moved for summary judgment. On August 19, 2008, the Engineers filed a motion for summary judgment requesting that the application be denied as a matter of law.

On June 17, 2009, the water court denied the Engineers' motion for summary judgment, but did draw two legal conclusions in its order that are relevant here. First, the court determined that "to perfect a conditional water right that allows storage, Colorado water law requires the applicant to show actual storage and actual beneficial use of a specific amount of water." Second, the court determined that "the [D]istrict must show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees allowing for storage in Stagecoach Reservoir." The water court further concluded that Fetcher's affidavit did not meet the requirement to supply "quantifiable evidence," and was not clear on whether "the water put to recreational and hydropower use was water in excess of [the District's] absolute decrees." Accordingly, the water court then allowed the District to produce quantifiable evidence of actual beneficial use in excess of its existing absolute decrees.

On October 14, 2009, the District filed a confession of judgment and motion for entry of judgment, stating that it could not show quantifiable evidence of actual beneficial use in excess of its existing absolute decrees in

the Four Counties Rights. Subsequently, the water court entered an order based on the court's rulings on the legal issues establishing the requisite standards and denied the District's application. The District then appealed to this Court.

On December 3, 2010, this Court remanded the case to the water court with instructions to clarify whether the water court's order was intended as a grant of summary judgment based on undisputed facts in favor of the Engineers, or a mere recognition of the District's "confession of judgment." On February 18, 2011, the water court issued a response to this Court's question and clarified that its order "reconsidered its prior denial of the [Engineers'] Motion for Summary Judgment and granted it in light of the [District's] confession."

■ Having clarified the water court's disposition, we now consider the merits of the District's appeal and affirm the water court's grant of summary judgment. We hold that in order to perfect a conditional water right that allows storage, an applicant must show actual storage and actual beneficial use of a specific amount of water. The applicant must also show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees allowing for storage; in other words, it must show that it has exhausted its absolute rights before its conditional rights can be perfected.

## II.

■ The facts are not at issue in this case. Instead, this Court has only been asked to review the legal conclusions of the water court. We review de novo a water court's ruling on questions of law. *West Elk Ranch, LLC v. United States,* 65 P.3d 479, 481 (Colo. 2002).

## A.

■ Section 37–92–103(6), C.R.S. (2010), defines a conditional water right as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." "[I]n order to perfect the conditional right, the applicant must satisfy the following criteria: (1) capturing, possessing, and controlling water; and (2) the application of the water to a beneficial use." *City of Lafayette v. New Anderson Ditch Co.,* 962 P.2d 955, 961 (Colo. 1998). The water court below concluded that in order "to perfect a conditional water right that allows storage ... the applicant [must] show *actual* storage and *actual* beneficial use of a specific amount of water" (emphasis added).

■ The District argues that the storage of water in Stagecoach Reservoir for later use by its contractees—as during a drought season—is a beneficial use and that therefore "actual" use is not required prior to making the conditional rights absolute. We disagree.

Beneficial use is "the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made." § 37–92–103(4). While the District correctly points out that the definition of beneficial use is a broad one that "requires careful case-by-case factual analysis," *Vance v. Wolfe,* 205 P.3d 1165, 1172 (Colo.2009), we decline to adopt the District's very broad reading in this case.

The District urges that placing water into storage "uses" it by removing the water from the stream system to "accomplish" a particular "purpose"—namely, use when needed at a later date. However, defining storage for a later date as "use" seems more akin to "speculative hoarding," and, as such, is in direct tension with Colorado's long-standing anti-speculation policy. *See Colo. River Water Conservation Dist. v. Vidler Tunnel Water Co.,* 197 Colo. 413, 417, 594 P.2d 566, 568 (1979) (water law "guarantees a right to appropriate, not a right to speculate"); *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited,* 170 P.3d 307, 313 (Colo.2007) (hereinafter "*Pagosa I*") (the fundamental purpose of the beneficial use requirement is "to establish the means for making the public's water resource available to those who had the actual need for water, in order to curb speculative hoarding").

In fact, this Court has consistently held that storage of water alone is not sufficient to

perfect a water rights appropriation. *See Highland Ditch Co. v. Union Reservoir Co.,* 53 Colo. 483, 485, 127 P. 1025, 1025 (1912) ("Diversion and storage [are] not sufficient to constitute an appropriation .... [T]he water so diverted and stored must be beneficially applied."); *Cline v. Whitten,* 150 Colo. 179, 185, 372 P.2d 145, 148 (1962) ("Diversion of water and its storage in a reservoir, even though sanctioned by decree, is not an appropriation of water.").

Section 37–92–305(9)(a), C.R.S. (2010), is additionally instructive, providing that "[n]o claim for a water right may be recognized or a decree therefor granted except to the extent that the waters have been diverted, *stored,* or otherwise captured, possessed, and controlled *and* have been applied to a *beneficial use*" (emphasis added). The plain terms of the statute suggest that storage, by itself, is not sufficient to satisfy the requirements of beneficial use; there must be storage "and" beneficial use. To hold otherwise would negate the purpose of the second clause of the statute. *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo.2005) ("when examining a statute's plain language, we give effect to every word and render none superfluous").

██ The District urges that the requirement of showing actual beneficial use of a storage right will undermine the very character and purpose of Colorado's large network of reservoirs. According to the District, such a requirement will cause water courts to cancel conditional water rights given that, once a reservoir is constructed and water stored, a water supplier can do nothing more to show diligence. However, in order to show diligence, an applicant need only show that is has been diligent in developing its water resource for a specific beneficial need. *See Trans–County Water, Inc. v. Cent. Colo. Water Conservancy Dist.,* 727 P.2d 60, 64 (Colo.1986) ("Reasonable diligence must be evidenced by reasonable progress in the development of the conditional appropriation in the most expedient and efficient manner.").

Section 37–92–301(4)(a)(I), C.R.S. (2010), dictates that every six years, a holder of conditional water rights "shall file an applica-

tion for a finding of reasonable diligence, or said conditional water right shall be considered abandoned." There is no exception for storage facilities, and the District has provided no support for its assertion that the reasonable diligence requirement is overly onerous on storage facilities. Instead, if this Court followed the District's rationale on this issue, storage facilities would have an incentive to hoard water in advance of receiving absolute decrees—contrary to the anti-speculation doctrine. Accordingly, the District is not exempt from the continuing reasonable diligence requirements that apply to all holders of conditional water rights.

In a similar vein, the District contends that requiring a showing of actual beneficial use in the storage rights context will lead to the absurd result that this Court sought to avoid in *N. Sterling Irrigation Dist. v. Riverside Reservoir & Land Co.,* 119 Colo. 50, 200 P.2d 933 (1948). In *North Sterling,* the Court rejected an outcome that would "invite waste, discourage conservation of water, and destroy the value of later reservoirs, but also would reduce the incentive for investing funds for the construction of reservoirs in the future, and be contrary to public policy." 119 Colo. at 54, 200 P.2d at 935. However, the North Sterling decision simply resolved whether beneficial use analysis is limited to the "amount of water actually diverted, stored, and applied in any one season or calendar year, and that no credit may be given for [any] carryover water." *Id.* There is nothing in the North Sterling opinion to suggest that water storage, in and of itself, is actual and beneficial use.

Additionally, the District argues that its act of mere storage is a form of drought protection, citing *Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District,* 689 P.2d 594, 603 (Colo.1984), for the proposition that flood control qualifies as a beneficial use. While flood control and drought protection are laudable goals in Colorado, the facts are simply not analogous to the situation that the District finds itself in here, where it is *not* seeking absolute rights for fire, flood, or drought protection. Instead, the District's stated uses on its application for an absolute

decree for storage include: domestic, municipal, irrigation, industrial, hydropower, mining, power, and a variety of augmentation purposes. In addition, Fetcher's affidavit states that the stored water has been applied to the beneficial uses of recreation and hydropower generation within the Stagecoach Reservoir in 2006; the affidavit also states that the water may be applied to aesthetic, piscatorial, and wildlife uses. For the District to assert that mere storage against the potential of drought should qualify as a beneficial use is improper because it did not assert such a use in its application for an absolute decree for storage or in Fetcher's affidavit to the water court. *See id.* at 598 (stating that the applicant specifically noted "flood control" as a beneficial use on an application for a change in beneficial use). Significantly, when given an opportunity by the water court to provide quantifiable evidence of its beneficial use, the District was unable to provide such evidence—neither its prior stated uses nor any other, recognizable beneficial uses. Instead, the District opted to rely on the argument that mere storage should qualify as beneficial use. Therefore, the water court properly found that the District failed to submit the required quantifiable evidence of its actual beneficial uses prior to an absolute decree. *See also Burlington Ditch, Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645 (Colo. 2011) ("Storage itself is not a beneficial use; the subsequent use of stored water, such as irrigation of lands, is the beneficial use for which water is stored.").

Accordingly, we affirm the water court's determination that in order to perfect a conditional water right that allows storage, Colorado water law requires the applicant to show actual storage and actual beneficial use of a specific amount of water.

**B.**

■ In addition to requiring a showing of actual beneficial use, the water court also held that the District needed to "produce such quantifiable evidence of actual beneficial use *in excess of its existing absolute decrees*" (emphasis added). The District argues that

the water court's so-called "absolutes first" doctrine is incorrect. We disagree.

The District contends that the nature of the Four Counties Rights are such that, after the decree in Case No. W–1091–76, all of these rights allow for diversion and storage at Stagecoach Reservoir based upon the amount available at the original points of diversion. As such, according to the District, this allows the entire amount of the Four Counties Rights to be diverted at Stagecoach Reservoir based upon the total amounts of water physically available in priority at the originally decreed points of diversion. The District points to this Court's opinion in *New Anderson Ditch Co.* to support the proposition that once a conditional water right has been decreed, the only question when considering an absolute application is whether the District has completed the appropriation envisioned by a prior judicial decree. 962 P.2d at 963 ("Perfection of a conditional water right requires application of water to a beneficial use so as to justify entry of an absolute decree fixing a priority relating back to the initiation of the appropriation."). As applied here, the District argues that the water court erred in requiring that the District demonstrate a need to divert its conditional water rights, for the purported reason that a water court has no authority to consider a water user's need for a water right after the initial issuance of a conditional decree. This argument fails for several reasons.

■ First, this Court has held that a water court may review whether a water user has a need for a conditional right, even after the conditional right has been decreed. *Mun. Subdistrict, N. Colo. Water Conservancy Dist. v. OXY USA, Inc.*, 990 P.2d 701, 709 (Colo.1999). Furthermore, changed circumstances often dictate whether a conditional water right can ripen into an absolute decree. *See New Anderson Ditch Co.*, 962 P.2d at 963 ("The conditional decree contemplated that [the applicant] would not obtain an absolute decree if it no longer had a lawful right to divert water.").

■ In addition, we have long held that once a conditional water right has been decreed, its holder has the continuing burden to establish a non-speculative need for that

right. *OXY*, 990 P.2d at 709 ("[B]ecause a conditional right, or some portion of that right, may become speculative over time ... the 'can and will' test continues to apply in later diligence proceedings."). This rationale similarly passes the test of common sense and experience. The entire purpose of having a dual system of conditional and absolute water rights is that conditional water rights have not yet ripened into fully vested rights and the water court retains jurisdiction to ensure that they are put to beneficial use.

■ In *Natural Energy Resources Co. v. Upper Gunnison River Water Conservancy District*, this Court held that conditional rights are subject "to continued scrutiny to prevent the hoarding of priorities to the detriment of those seeking to apply the state's water beneficially." 142 P.3d 1265, 1277 (Colo.2006) (quoting *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 35 (Colo.1997)). Additionally, in *City of Thornton v. Bijou Irrigation Co.*, this Court held that an applicant was required to make continued showings of need for its conditional water rights as part of a series of so-called "reality checks" that were created to ensure that "optimistic" projections of future growth were still realistic targets as the project progressed. 926 P.2d 1, 49 (Colo.1996). "Only time can definitely determine," we added, "whether all, a part or none of the claimed water is needed." *Id.* at 51 (quoting *Four Counties Water Users Ass'n v. Colo. River Water Conservation Dist.*, 159 Colo. 499, 512, 414 P.2d 469, 476 (1966)). It is only logical that this requirement of showing continued need would extend to an application to perfect a conditional water right. As applied here, the District cannot show need to perfect its conditional water rights unless it can demonstrate that it has exhausted its absolute rights first. *See Upper Yampa Water Conservancy Dist. v. Dequine Family LLC*, 249 P.3d 794, 800 (Colo.2011) (new conditional water rights cannot be decreed "in the absence of a specific plan and intent to put the appropriative waters to a beneficial use, *including a demonstration of its need for the additional waters* for that purpose") (emphasis added).

■ Moreover, while this Court has never specifically addressed whether a water

court must consider the continued need for a conditional water right in a proceeding to make the right absolute, our prior cases in the diligence proceedings context support such a result. Both *OXY* and *Bijou* dealt with the requirements of continued diligence in the context of diligence proceedings, but the analysis is analogous to the situation at hand. As we said in Bijou, "[i]f the trial court's requirement that [the applicant] make future showings of continued need is invalid, there is no remedy to correct inaccuracies in the original projections and therefore no mechanism to assure that the conditional decree is in an amount that [the applicant] predictably can make absolute *based on adjusted, realistic estimates of future need.*" 926 P.2d at 51 (emphasis added). As we continued, "the inclusion of this requirement is consistent with the purpose underlying both the anti-speculation doctrine and the diligence requirements, i.e[.], preserving unappropriated water for users with legitimate, documentable needs." *Id.* Applying the rationales of *OXY* and *Bijou* to the case at hand, we determine that a water court must consider the continued need for a conditional water right when considering an application to make a conditional water right absolute.

Finally, we address the District's argument that it is in the best position to determine which water rights to deploy at certain times, in its effort to "balance its portfolio" of rights against possible future stream-specific limitations. The District urges that, by adopting the "absolutes first" theory, the water court has potentially dampened the District's ability to pick and choose which rights to use at certain times, theoretically opening the District up to supply shortages if a future event hampers the ability of the District to fill Stagecoach Reservoir with its current portfolio of absolute rights.

In determining whether an applicant has demonstrated beneficial use, we have previously held that a trial court could consider an applicant's "use of its existing water rights portfolio in determining the [applicant's] need for its newly decreed conditional water rights." *Bijou*, 926 P.2d at 52; *see also Pagosa Area Water & Sanitation Dist. v.*

*Trout Unlimited,* 219 P.3d 774, 780, 787 (Colo.2009) (hereinafter *"Pagosa II"*) (stating that need for a conditional water right is determined by taking into account current water supply available to the district). The District's concern is speculative at best, and, in any event, legally incorrect based on past precedent. The District argues that the water court's "unease regarding speculation is not at issue where a water right is diverted and put to a beneficial use." First, the District's lack of a cognizable beneficial use was discussed above. Second, even if the District was able to show a valid beneficial use, it still needs to comply with the applicable law. In short, the District's ability to balance its rights does not supersede existing statutes and case law.

Accordingly, we affirm the water court's determination that the District must show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees allowing for storage in Stagecoach Reservoir.

### III.

For the foregoing reasons, we affirm the opinion of the water court.