The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 42
Supreme Court Case No. 15SA26
Appeal from the District Court
Garfield County District Court, Water Division 5, Case No. 04CW236
Honorable James Boyd, Water Judge
Concerning the Application for Water Rights of the Upper Eagle Regional Water Authority in the Eagle River in Eagle County, Colorado
Applicant-Appellant:
Upper Eagle Regional Water Authority,
v.
Opposers-Appellees:
Dick Wolfe, State Engineer, and Alan Martellaro, Division 5 Engineer.
Judgment Reversed
en banc
May 31, 2016
Attorneys for Applicant-Appellant:
Porzak Browning & Bushong LLP
Glenn E. Porzak Kevin J. Kinnear
 Boulder, Colorado
Attorneys for Opposers-Appellees:
Cynthia H. Coffman, Attorney General
Paul L. Benington, First Assistant Attorney General Jeffrey N. Candrian, Assistant Attorney General Derek L. Turner, Assistant Attorney General
Denver, Colorado

¶1     On July 4, 2004, the Upper Eagle Regional Water Authority (the “Authority”) diverted 0.716 cubic feet per second (“cfs”) of water at the Edwards Drinking Water Facility on the Eagle River and delivered that water to the Cordillera area for beneficial use. On that date, there was a “free river,” meaning that there was no call on the Colorado or Eagle Rivers. Of the 0.716 cfs diverted and delivered to Cordillera, the Authority allocated 0.47 cfs to its Eagle River Diversion Point No. 2 conditional water right (the “Junior Eagle River Right”) and filed an application to make this amount absolute. The State and Division Engineers (the “Engineers”) opposed the application, asserting that the Authority could not make its Junior Eagle River Right absolute when it owned another, more senior conditional water right, the SCR Diversion Point No. 1 water right (the “Senior Lake Creek Right”), decreed for the same claimed beneficial uses at the same location and for diversion at the same point. The Engineers took the position that, if two conditional water rights with different priorities are equally available, diversions should be attributed to the senior right until it is exhausted, and only then attributed to the junior right. The water court agreed with the Engineers, and held that the July 4, 2004, diversion must be allocated first to the Senior Lake Creek Right.
¶2     The Authority now appeals, and we reverse. We hold that where there is no evidence of waste, hoarding, or other mischief, and no injury to the rights of other water users, the owner of a portfolio of water rights is entitled to select which of its different, in-priority conditional water rights it wishes to first divert and make absolute. However, the portfolio owner must live with its choice. Since it has chosen to make a portion of the Junior Eagle River Right absolute, the Authority may not now divert and use the Senior Lake Creek Right unless it demonstrates that it needs that water right in addition to the Junior Eagle River Right.
I.
¶3     The Authority serves the Cordillera area through a water service agreement, effective as of March 25, 2004, between the Authority, the Edwards Metropolitan District, and the Cordillera Metropolitan District, as successor to the Squaw Creek Metropolitan District. Pursuant to the agreement, the Cordillera Metropolitan District conveyed certain water rights and facilities to the Authority. The Authority uses these water rights and facilities to provide water services to the Cordillera area.
¶4     Among the water rights conveyed to the Authority were the two conditional water rights at issue here: the Senior Lake Creek Right, with a priority year of 1989, and the Junior Eagle River Right, with a priority year of 1991. Both water rights are decreed for uses including the claimed beneficial uses of irrigation, domestic, commercial, and fire protection, and both may be alternately diverted at the Edwards Drinking Water Facility. In addition to their different priorities, however, these two water rights differ in their sources and their inclusion in augmentation plan decrees. The source of the Senior Lake Creek Right is West Lake Creek, and the diversion of the Senior Lake Creek Right at the alternate points of diversion on the Eagle River at Metcalf Headgate and Raw Water Booster Pump Headgate is limited to the amounts of water physically available in priority at the original point of diversion on West Lake Creek. The source of the Junior Eagle River Right, in contrast, is the Eagle River, and the Junior Eagle River Right is not limited to the flow on West Lake Creek at any of its points of diversion. Additionally, the Junior Eagle River Right is included in eight augmentation plan decrees, while the Senior Lake Creek Right is included in only six.
¶5     On July 4, 2004, the Authority diverted 0.716 cfs of water at the Edwards Drinking Water Facility on the Eagle River during free river conditions and delivered that water to the Cordillera area for beneficial use. Of the 0.716 cfs diverted and delivered to Cordillera, the Authority allocated 0.47 cfs to the Junior Eagle River Right. On December 29, 2004, the Authority filed an Application for a Finding of Reasonable Diligence and to Make Water Right Absolute (“Application”). The Application sought confirmation that the Authority had made absolute 0.47 cfs of the Junior Eagle River Right, for irrigation, domestic, commercial, and fire protection purposes, by diverting this amount of water at the Edwards Drinking Water Facility during free river conditions. The Engineers opposed the Application, asserting that the Authority must exhaust its senior rights before making absolute its junior conditional right.
¶6     The Engineers initially took the position that absent notice of intent to forgo its senior water rights and justification for the same, the Authority’s diversions must be attributed to senior rights before junior ones, according to the policy of “seniors first.” Thus, under the “seniors first” policy, the Authority’s diversions must be attributed (1) first to its senior absolute water rights; (2) then to its senior conditional right; and (3) finally to its junior conditional right. Subsequently, however, the parties stipulated that the Authority’s absolute water rights would be used only for augmentation purposes, and so were not available for direct use on July 4, 2004. The only issue on appeal is thus whether the Authority may select a junior direct-flow conditional water right to first make absolute when it has available a more senior conditional water right decreed for diversion at the same structure, for the same claimed beneficial uses at the same location.
¶7     On February 28, 2007, the Engineers filed a motion for partial summary
judgment, and the Authority filed its own motion for summary judgment the same day. On December 4, 2008, the water court granted the Engineers’ motion in part and denied the Authority’s motion in whole, holding that the Authority
does not have unfettered discretion to select among several priorities to determine which priority has been placed to beneficial use when the subject rights are decreed to the same point of diversion for the same direct uses at the same place of use. In such instances, applicants are to allocate diversions in order of their priority.
The Authority filed a motion for clarification on January 9, 2009, and on November 3, 2009, the water court affirmed its order. In addition, the water court determined that there were no remaining issues of fact, and thus that the Engineers’ motion for partial summary judgment should be granted in full. On August 7, 2014, the court ordered the parties to submit position statements. The Authority took the position that, as the owner of the subject water rights and the operator of a large municipal water system, it was entitled and best equipped to make decisions regarding which of its different conditional water rights to divert and use. The Engineers took the position that the Authority was required to allocate diversions to its senior conditional right before its junior conditional right.

¶8     The water court entered its final decree on December 22, 2014. The court found
that the Authority had demonstrated reasonable diligence with respect to the development of its conditional water rights, and that as a result they should be continued in full force and effect. However, the court denied the Authority’s claim for making absolute 0.47 cfs of the Junior Eagle River Right. Noting the stipulation of the parties that the Authority had no absolute water right available for direct use on July 4, 2004, the court ruled that the diversion must be allocated to the senior conditional right before the Authority could divert under the junior conditional right. The water court reasoned that
[t]he Authority offers reasons for its choice to select the junior conditional right. The same reasons could be applied to an allocation of use among absolute rights. Absolute rights mature over time, the maturity to be fixed in later change proceedings by quantification into historic consumptive use. If the owner of water rights is free to choose, the same considerations might direct a choice to select a junior absolute right to build into it more historic use.
Thus, although there was no dispute that water was available for diversion on July 4, 2004, under both the Senior Lake Creek Right and the Junior Eagle River Right, the court held that the Authority’s diversion must be allocated to the Senior Lake Creek Right.
¶9     We now consider the merits of the Authority’s appeal and reverse the decree of the water court. We hold that where there is no evidence of waste, hoarding, or other mischief, and no injury to the rights of other water users, the owner of a portfolio of water rights is entitled to select which of its different, in-priority conditional water rights it wishes to first divert and make absolute. We note that this holding is limited to conditional water rights, and does not extend to a choice between senior and junior absolute water rights. Further, the portfolio owner must live with its choice. Since it has chosen to make a portion of the Junior Eagle River Right absolute, the Authority may not now divert and use the Senior Lake Creek Right unless it demonstrates that it needs that water right in addition to the Junior Eagle River Right.
II.
¶10      The facts in this case are not in dispute. We review de novo the water court’s conclusions of law. San Antonio, Los Pinos & Conejos River Acequia Pres. Ass’n v.  Special Improvement Dist. No. 1 of Rio Grande Water Conservation Dist., 270 P.3d 927, 935 (Colo. 2011).
A.
¶11      A conditional water right is “a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based.” § 37-92-103(6), C.R.S. (2015). “A conditional water right is established upon the concurrence of an intent to appropriate and the performance of overt acts in furtherance of that intent, commonly referred to as a ‘first step.’” N. Colo. Water Ass’n v. Three Peaks Water, Inc., 859 P.2d 836, 839 n.2 (Colo. 1993) (quoting Pub. Serv. Co. of Colo. v. Bd. of Water Works, 831 P.2d 470, 476 (Colo. 1992)). Thus, “[s]o long as a conditional right is developed with reasonable diligence, upon completing the appropriation by applying water to beneficial use the holder of the right will be entitled to an appropriation date that relates back to the date of the ‘first step.’” Id. A conditional water right can be made absolute by diversion at a decreed location, including a decreed alternate point of diversion. Id. at 843.
¶12      In Upper Yampa Water Conservancy District v. Wolfe, 255 P.3d 1108, 1114 (Colo. 2011), this court held that the owner of a conditional water right seeking to make the right absolute must show a need for the conditional right. Specifically, we held that an applicant “cannot show need to perfect its conditional water rights unless it can demonstrate that it has exhausted its absolute rights first.” Id. The applicant in that case was thus required to “show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees” before making its conditional water rights absolute. Id. at 1115. This requirement of demonstrated need functions to “prevent the hoarding of priorities to the detriment of those seeking to apply the state’s water beneficially.” Id. at 1114 (quoting Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist., 142 P.3d 1265, 1277 (Colo. 2006)). Relying on Upper Yampa, the Engineers argue that the Authority cannot make its junior conditional right absolute because it could have had no need for its junior conditional right when its senior conditional right was available. We disagree.
¶13      It is undisputed that the Authority diverted in excess of 0.47 cfs from the Eagle River at the Edwards Drinking Water Facility during free river conditions on July 4, 2004, and that the Edwards Drinking Water Facility is a decreed alternate point of diversion for both the Senior Lake Creek Right and the Junior Eagle River Right. It is further undisputed that the Authority needed water under some water right that day to serve the Cordillera area, and that the Authority put the water to beneficial use. The parties have stipulated that the Authority’s absolute water rights were not available. The only question before us is thus whether the diversion must be attributed to the senior conditional right, as the Engineers contend, or whether it may be attributed at the Authority’s discretion to the junior conditional right instead.
¶14      Because this case does not involve a choice between absolute and conditional water rights, the Engineers’ reliance on Upper Yampa is misplaced. The rule that an applicant “must show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees” before it may allocate diversions to a conditional right, 255 P.3d at 1115, does not resolve the question here, where the choice is between two conditional rights. Because it is undisputed (1) that the Authority needed the water it diverted and placed to beneficial use in the Cordillera area on July 4, 2004, and (2) that the Authority required one of its conditional water rights to satisfy that need, the Authority’s demonstrated, legitimate need for a conditional water right is not at issue in this case. The holding of Upper Yampa does not compel the choice of the senior over the junior conditional right in all circumstances. We therefore reject the Engineers’ argument that the Authority could have had no need for its junior conditional right when its senior conditional right was equally available.
B.
¶15      Next, the Engineers argue that the “seniors first” administrative policy, as applied here to require allocation of the Authority’s diversion to its senior rather than its junior conditional right, correctly expresses and is mandated by the applicable Colorado constitutional and statutory law. Again, we are not persuaded.

¶16      The Colorado Constitution provides that “[p]riority of appropriation shall give the better right as between those using the water for the same purpose,” Colo. Const. art. XVI, § 6, and the General Assembly has developed a statutory scheme to implement the constitutionally-established prior appropriation system, see § 37-92-102(1)(a), C.R.S. (2015). A water right is defined as “a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same.” § 37-92-103(12) (emphasis added). The Engineers are required by statute to administer water rights in accordance with the prior appropriation system:
In the distribution of water, the division engineer in each division and the state engineer shall be governed by the priorities for water rights and conditional water rights established by adjudication decrees entered in proceedings concluded or pending on June 7, 1969, and by the priorities for water rights and conditional water rights determined pursuant to the provisions of this article. All such priorities shall take precedence in their appropriate order over other diversions of waters of the state.
§ 37-92-301(3), C.R.S. (2015).
¶17      We reject, as an initial matter, the Authority’s argument that the Engineers have no authority to administer the attribution of diversions to water rights during free river conditions. The Authority relies on this court’s statement in Empire Lodge Homeowners’ Ass’n v. Moyer, 39 P.3d 1139, 1149 n.14 (Colo. 2001), that “[i]n contrast to short supply conditions, ‘free river’ conditions occur when there is sufficient natural supply to satisfy all water uses, whether decreed or undecreed, and State Engineer administration is unnecessary for the protection of decreed water rights.” The fact that the Engineers lack authority to curtail certain diversions during free river conditions does not, however, excuse the Engineers from their duty to account for such diversions by attributing them to available water rights in priority. As the water court correctly observed, the prior appropriation system does not cease to exist when there is sufficient water to satisfy all users.
¶18      The Engineers argue that the “seniors first” administrative policy is necessary to the fulfillment of their statutory duty to effectively administer the prior appropriation system, and is comparable to the “fixed water year” policy upheld by this court in North Sterling Irrigation District v. Simpson, 202 P.3d 1207 (Colo. 2009). North Sterling involved the “one-fill” limitation on water storage rights, under which a reservoir is limited to one annual filling according to its decreed capacity. Id. at 1211. The state and division engineers imposed a fixed water year, from November 1 to October 31, for purposes of administering the one-fill rule: after the plaintiff obtained one annual fill of its decreed rights, that is, the engineers would not honor calls until the water year began anew on November 1. Id. at 1208–09. Like the “seniors first” policy at issue here, the fixed water year policy was not promulgated under the state engineer’s rulemaking power pursuant to section 37-92-501(1). Id. at 1209. The plaintiff challenged the merits of the policy.
¶19      This court noted that the state and division engineers were authorized under section 37-92-502 to curtail diversions that contravene applicable law, id. at 1210, and that Colorado law imposes a one-fill limitation on storage rights, id. at 1211. Accordingly, “the state engineer and division engineers are bound by their statutory mandate to account for, and if necessary, curtail diversions that violate the one-fill rule.” Id. The fixed water year, we held, did not interfere with the plaintiff’s decreed rights, but was “merely the administrative mechanism by which” the one-fill rule lawfully prevented the plaintiff from calling for water in excess of those rights. Id. at 1208.
¶20      The Engineers urge us to find that the “seniors first” policy, as applied here to require allocation of the Authority’s diversion to its senior rather than its junior conditional right, is similarly necessary to effectively administer the prior appropriation system and prevent the Authority from calling for water in excess of its decreed rights. The danger in permitting the Authority to select among its conditional rights, the Engineers argue, is that this would allow the Authority to change its attribution of diversions from one day to the next: to claim 0.47 cfs under the Junior Eagle River Right today, for example, and then 0.47 cfs under the Senior Lake Creek Right tomorrow, thus making 0.94 cfs absolute when the instantaneous diversion rate never exceeded 0.47 cfs. This in turn would interfere with water availability analyses by other prospective water users, because such analyses take into account only historical diversions of absolute water rights and not unperfected conditional water rights. See In re Bd. of Cty.  Comm’rs of Cty. of Arapahoe, 891 P.2d 952, 962 (Colo. 1995). If the Authority could change its attribution of diversions from one day to the next, the Authority could make absolute more water rights than it ever actually needed.
¶21      The contemplated mischief is forbidden, however, by the rule of Upper Yampa. An applicant seeking to make a conditional water right absolute must show its need for the conditional right, and cannot do so “unless it can demonstrate that it has exhausted its absolute rights first.” Upper Yampa, 255 P.3d at 1114. Thus, an applicant “must show with quantifiable evidence that it in fact appropriated water in excess of its existing absolute decrees” before making a conditional water right absolute. Id. at 1115. Because it has chosen to make 0.47 cfs of the Junior Eagle River Right absolute, the Authority may not now seek to make any portion of the Senior Lake Creek Right absolute unless it can show that it needs to divert to Cordillera more than the 5 cfs decreed to the Junior Eagle River Right for the same claimed beneficial uses. Contrary to the Engineers’ argument, therefore, permitting the Authority to first perfect its junior conditional right would not permit it to change its attribution of diversions at a whim. If the Junior Eagle River Right proves sufficient to serve Cordillera at full build-out, it is possible that the Authority might not ever make the Senior Lake Creek Right absolute. In short, the Authority must live with its choice.
¶22      Consequently, we are not persuaded that the “seniors first” policy as applied here is “merely the administrative mechanism by which” an existing rule or law prevents the Authority from calling for water in excess of its decreed rights, N. Sterling, 202 P.3d at 1208, and thus we find it distinguishable from the fixed water year policy at issue in North Sterling. As a result, we find that the Engineers may not apply the “seniors first” policy here to force the Authority to allocate its July 4, 2004, diversion to its senior rather than its junior conditional right.
III.
¶23      We hold that, in the absence of any evidence of waste, hoarding, or injury to the rights of other water users, the Authority may select which of its two conditional water rights, decreed and available for diversion at the same structure, for the same place of use, and for the same claimed beneficial uses, it wishes to first divert and make absolute. We therefore reverse the water court’s determination that the Authority’s July 4, 2004, diversion must be allocated to the Senior Lake Creek Right, and remand this case to the water court with instructions to make absolute 0.47 cfs of the Junior Eagle River Right.